IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| THE CONFEDERATED TRIBES<br>OF THE COLVILLE RESERVATION,<br>One Colville Street<br>Nespelem, WA 99155<br><br>      Plaintiff,<br><br>v.<br><br>GALE A. NORTON<br>SECRETARY OF THE INTERIOR<br>U.S. Department of the Interior<br>1849 C Street N.W.<br>Washington, D.C. 20240<br><br>JOHN W. SNOW<br>SECRETARY OF THE TREASURY<br>U.S. Department of the Treasury<br>1500 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20220<br><br>      Defendants. | Civil Action No. 05-____ ( ) |

## COMPLAINT

Plaintiff, CONFEDERATED TRIBES OF THE COLVILLE RESERVATION sues Defendants, GALE A. NORTON, Secretary of the Interior, and JOHN W. SNOW, Secretary of the Treasury, as follows:

1. This is an action by the Colville Tribes for an accounting of its trust funds, and for related relief.

## PARTIES

2. The Confederated Tribes of the Colville Reservation ("Plaintiff" or "Colville Tribes") is a federally-recognized Indian tribe, recognized by the United States as a sovereign

Indian tribe with legal rights and responsibilities, eligible for the special programs and services provided by the United States to Indians because of its status as an Indian tribe.

3.  Defendant Gale A. Norton is the Secretary of the Interior and charged by law with carrying out the duties and responsibilities of the United States as trustee for the Colville Tribes.

4.  Defendant John W. Snow is the Secretary of the Treasury, and in that capacity is custodian of tribal trust funds, and has a responsibility with regard to the administration of such funds and the preparation and maintenance of records in connection with those funds.

5.  Defendants Norton and Snow (collectively "Defendants") are sued in their official capacities.

## JURISDICTION AND VENUE

6.  This Court has personal jurisdiction over each of the Defendants with respect to the claims set forth in this Complaint.

7.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1346 (United States as defendant) and 5 U.S.C. §§ 551 *et seq.* ("Administrative Procedure Act" or "APA"). This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1362 (actions by Indian tribes), 28 U.S.C. § 2201 (Declaratory Judgment Act) and 28 U.S.C. § 1361 (action to compel officer of the United States to perform official duty).

8.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because one or more of the Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District. Venue is also proper in this District pursuant to 5 U.S.C. §§ 701, 703 and 704.

## ALLEGATIONS

9. Plaintiff occupies the Colville Indian Reservation in Washington state and is the beneficial owner of land and natural resources, including timber, valuable oil, gas and mineral reserves within the Reservation, title to which is held in trust by the United States for the benefit of the Colville Tribes. The Plaintiff's lands also include land valuable for grazing and agricultural purposes.

10. Under law, tribal land held in trust by the United States is inalienable except as authorized by Congress. 25 U.S.C. § 177. Congress has granted the Secretary of the Interior authority to approve conveyances of certain interests in trust land, such as leases, easements, and rights of way. The law further establishes the terms and conditions under which such conveyances may be made, and generally requires that compensation be paid to the tribe for the use of tribal lands.

11. By various acts of Congress, commencing with statutes adopted more than a century ago, Congress authorized the Secretary of the Interior to collect income from tribal trust property and to deposit such trust income in the United States Treasury and other depositary institutions for the benefit of tribes. See e.g., Act of March 3, 1883, c. 141, § 1, 22 Stat. 590. By subsequent statutes, Congress directed that interest be paid on tribal trust funds, and required that such trust funds be invested. See e.g., Act of February 12, 1929, c. 178, 45 Stat. 1164, codified as amended, 25 U.S.C. § 161b; Act of June 24, 1938, 52 Stat. 1037, codified as amended, 25 U.S.C. § 162a.

12. Defendants exercise control and management over trust property of the Plaintiff. Defendant Secretary of the Interior has approved leases, easements and other conveyances of

3

interests in trust lands of the Plaintiff, and Defendants have assumed responsibility for collection, deposit and investment of the income generated by trust lands of the Plaintiff. These include funds generated by timber sales, oil and gas bid deposits, bonuses, rents, lease and royalty payments, grazing and agricultural leases, and judgments paid to the Plaintiff.

13. Because the United States holds tribal land in trust, it has assumed the obligations of a trustee. United States v. Mitchell, 463 U.S. 206, 225 (1983); Cobell v. Norton, 240 F.3d 1081 (D.C. Cir. 2001). As trustee, the United States has a fiduciary relationship with obligations of the highest responsibility and trust to administer the trust with the greatest skill and care possessed by the trustee. The United States has a fiduciary duty to the Plaintiff requiring that it exercise "the most exacting fiduciary standards" in managing Plaintiff's land and mineral estate and trust funds. Navajo Tribe of Indians v. United States, 176 Ct. Cl. 502, 507 (1966). The United States "'has charged itself with moral obligations of the highest responsibility and trust' in its conduct with Indians, and its conduct 'should therefore be judged by the most exacting fiduciary standards.'" Cobell v. Norton, 240 F.3d at 1099 (quoting Seminole Nation v. United States, 316 U.S. 286, 297 (1942)).

14. The trust obligations of the United States include, among other duties, the duty to ensure that tribal trust property and trust funds are protected, preserved and managed.

15. The trust obligations of the United States include, among other duties, the duty to maintain adequate records with respect to the trust property; to maintain adequate systems and controls to guard against error or dishonesty; to provide regular and accurate accountings to the trust beneficiaries; to refrain from self-dealing or benefiting from the management of the trust property, to collect all proceeds due to Plaintiff from conveyances of interest in tribal trust lands

and from administration and management of tribal trust funds.

16. Congress has charged the Defendants with fulfilling the obligations of the United States as trustee, including responsibility for the administration and management of all trust property of the Plaintiff.

17. Defendants control all the books and records of account concerning Plaintiff's trust funds and trust property. Defendants, however, have never rendered an audit or accounting to Plaintiff for Plaintiff's trust monies. Defendants have further failed to establish any effective system or provision for regular or periodic accounting for the trust property and funds. As a consequence, Defendants have kept and continue to keep Plaintiff, as the trust beneficiary, uninformed as to the status of trust funds/property under Defendants' control and management, what income the trust property has produced, and what disposition has been made of the income.

18. As found by the United States Inspector General for the Department of the Interior, the United States General Accounting Office, and the United States Congress, among others, there are massive and long-standing problems with the Defendants' administration of Indian trust funds. After a series of oversight hearings on Interiors' management of Indian trust funds, Congress issued a report condemning those practices. See Misplaced Trust, Bureau of Indian Affairs Mismanagement of the Indian Trust Fund, H.R. Rpt. No. 102-499 (1992). As Congress found:

> Scores of reports over the years by the Interior Department's Inspector General, the U.S. General Accounting Office, the Office of Management and Budget, have documented significant, habitual problems in BIA's ability to fully and accurately account for trust fund moneys, to properly discharge its fiduciary responsibilities, and to prudently manage the trust funds. [Id. at 2]...
>
> The [BIA] has repeatedly ignored directives to undertake needed

5

>management reform measures. [Id. at 3]...
>
>As a result of this dismal history of inaction and incompetence, there is no assurance that the [BIA] actually desires to, or will, make any substantial advancement toward rectifying the basic financial management failures brought to their attention. Despite a decade of incentives, the [BIA's] headquarters leadership and accountability continue to be woefully inadequate....
>
>It is apparent that top Interior Department officials have utterly failed to grasp the human impact of its final management of the Indian trust fund. The Indian trust fund is more than balance sheets and accounting procedures. These moneys are crucial to the daily operations of Native American tribes and a source of income to tens of thousands of Native Americans. [Id. at 5].

Congress further found the Defendants' administration of Indian trust funds to be:

>Grossly inadequate in numerous important respects. The [BIA] has failed to accurately account for trust fund moneys. Indeed, it cannot even provide account holders with meaningful periodic statements on their balances. It cannot consistently and prudently invest trust funds and pay interest to account holders. It does not have consistent written policies or procedures that cover all of its trust fund accounting practices. Under the management of the [BIA], the Indian trust fund is equivalent to a bank that doesn't know how much money it has.

Id. at 56.

19. Upon information and belief, Defendants' mismanagement of trust funds has resulted in losses to Plaintiff, a trust beneficiary. However, the extent of such losses is unknown to Plaintiff because Defendants have failed to provide Plaintiff with an accounting of its trust funds, and further have failed to maintain accurate books and records of account, lost and destroyed relevant trust account records, failed or refused to disclose known losses to the trust beneficiaries, failed or refused to reimburse trust beneficiaries for losses to their trust funds. See Misplaced Trust, H.R. Rpt. No. 102-499 at 37-41.

20. By the Act of December 22, 1987, Pub. L. No. 100-202, 101 Stat. 1329, Congress required Defendants to: (1) audit and reconcile tribal trust funds, and (2) provide the tribes with an accounting of such funds. Congress reaffirmed the two mandates of the 1987 Act in subsequent statutes, namely the Act of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; the Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915, and the Act of November 3, 1991, Pub. L. No. 102-154, 105 Stat. 990. By these Acts, Congress further required that the Defendants certify, through an independent party, the results of the reconciliation of tribal trust funds as the most complete reconciliation possible of such funds.

21. To protect the rights of Indian tribes until accountings of their trust funds could be completed, Congress has provided, in each appropriations act for the Department of the Interior since 1990, that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds form which the beneficiary can determine whether there has been a loss." See, e.g., Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915.

22. On October 25, 1994, Congress enacted the American Indian Trust Fund Management Reform Act, codified at 25 U.S.C. §§ 4001-61. Under this Act, Congress recognized and reaffirmed the United States' pre-existing trust responsibilities and charged the Defendants with additional responsibilities to ensure proper discharge of the United States' trust responsibilities. These include the duty to provide periodic, timely accountings of trust funds to tribal and individual Indian beneficiaries, and the duty to cause an annual audit of all trust funds to be conducted. 25 U.S.C. § 4011; 25 U.S.C. § 162a(d).

23. As evidenced by reports issued by, among others, the Department of the Interior's Inspector General, the General Accounting Office, and the Office of Management and Budget, notwithstanding the foregoing Acts of Congress, Defendants have failed and continue to fail to implement the reforms required by law. The Defendants' continued failure to implement reforms required by Congress and to provide timely and meaningful accountings is now the subject of pending litigation in this Court, Cobell v. Norton, No. 96-1285 (D. D.C. 1996). The proceedings in that case, which are focused on trust accounts of individual Indians, confirm the Government's fiduciary obligations to all Indian trust beneficiaries and the Government's breach of those obligations by failing to account. See Cobell v. Babbitt, 91 F.Supp.2d 1 (D. D.C. 1999), aff'd sub nom Cobell v. Norton, 240 F.3d 1081 (D.C. Cir. 2001).

24. In the early 1990s, the Department of the Interior entered into a contract with the Arthur Andersen accounting firm under which Arthur Andersen was to provide a reconciliation of certain tribal trust fund accounts.

25. In 1995, a report prepared by Arthur Andersen was delivered to Plaintiff. This report (the "Andersen Report") attempted to provide an accounting for Plaintiff's trust funds held by the Department of the Interior, Bureau of Indian Affairs ("BIA"), from 1972 through 1992.

26. The Andersen Report delivered to Plaintiff expressly states that the work done does "not constitute an audit made in accordance with generally accepted auditing standards."

27. The Andersen Report was not certified by an independent party as required by the Acts of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915, and November 3, 1991, Pub. L. No. 102-154, 105 Stat. 990, described in paragraph 18 above. The Andersen Report has been criticized by the General Accounting

Office, among others. See United States General Accounting Office, Report to Senate Committee on Indian Affairs, Tribal Reconciliation Results, GAO Report No. B-266127, May 3, 1996.

28.     The Andersen Report does not reflect reliable, accurate or complete accountings of Plaintiff's trust funds because, among other reasons: (a) the report was not conducted pursuant to generally accepted accounting principles, but rather was based on procedures defined by the BIA, which imposed limitations on the scope of the work and made changes in methodologies over the course of the project that were not disclosed to the Colville Tribe; (b) the report was premised on the erroneous assumption that an accounting of trust funds could be done based on review of information recorded in the BIA's accounting system, without determining whether all receipts or income due had been collected and properly recorded by the BIA, and therefore fails to address the possibility that materially significant transactions were not recorded by the BIA or that the information as recorded by the BIA was inaccurate or in error; (c) the Andersen Report does not disclose adjustments that were recommended by Arthur Andersen but which the BIA did not accept; (d) the Andersen Report fails to address many transactions where accounting records could not be located. See United States General Accounting Office, Report to Senate Committee on Indian Affairs, Tribal Reconciliation Results, GAO Report No. B-266127, May 3, 1996.

29.     Defendants asked the Colville Tribes whether it accepted the findings of the Andersen Report as a full and complete accounting, and whether the Colville Tribes accepted the balances of its trust funds, as reflected in the Andersen Report. The Colville Tribes did not accept the Andersen Report.

30. To date, the Defendants have failed to provide Plaintiff with a full accounting of Plaintiff's trust funds.

## COUNT I
## DECLARATORY JUDGMENT

31. The Tribe re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 30 above.

32. Federal law charges Defendants with a fiduciary duty of the highest responsibility and trust to administer Plaintiff's trust property with the greatest skill and care.

33. Defendants' fiduciary duties include, among other duties, the duty to provide Plaintiff with a full and complete accounting of Plaintiff's trust funds.

34. Defendants have failed to provide Plaintiff with an accounting of Plaintiff's trust funds, and such failure constitutes a breach of Defendants' fiduciary duties to Plaintiff in violation of federal law.

35. An actual controversy exists between Plaintiff, on the one hand, and Defendants, on the other, with respect to the existence and scope of Defendants' fiduciary duties to Plaintiff. This controversy is now ripe for resolution by the Court. Without prompt resolution, Plaintiff will continue to suffer irreparable harm, injury and prejudice as a result of Defendants' failure to fully comply with their fiduciary obligations.

36. It is now appropriate for the Court to determine and declare the parties' rights and obligations to one another with respect to the existence and scope of Defendants' fiduciary duties to Plaintiff, and all related aspects of this matter.

37. Plaintiff is entitled to a declaration that Defendants owe a duty to Plaintiff to provide Plaintiff with a full and complete accounting of Plaintiff's trust funds.

38. Plaintiff is further entitled to a declaration that Defendants have not provided Plaintiff with a full and complete accounting of the Colville Tribes' trust funds.

39. Plaintiff is further entitled to a declaration that Defendants' failure to provide Plaintiff with a full and complete accounting constitutes of breach of Defendants' fiduciary duties owed to Plaintiff.

## COUNT II
## INJUNCTION TO COMPEL ACCOUNTING

40. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 39 above.

41. Defendants' continuing failure to provide Plaintiff with complete and accurate accountings of Plaintiff's trust funds has caused, and will continue to cause, Plaintiff irreparable injury because, among other harms, records necessary for proper accounting have been, and may continue to be, lost or destroyed, thereby depriving Plaintiff of the information essential to determining whether Plaintiff's trust funds have been properly administered.

42. The acts and omissions of the Defendants alleged herein constitute final agency action and the unlawful withholding of agency action for purposes of the APA.

43. With respect to the acts and omissions alleged herein, Defendants have acted arbitrarily and capriciously and not in accordance with law in violation of the APA.

44. Plaintiff is entitled to injunctive relief requiring Defendants to provide Plaintiff with a full and complete accounting of all of Plaintiff's trust funds.

**WHEREFORE, Plaintiff respectfully prays that this Court:**

(a) Declare that the Defendants owe a duty to the Colville Tribes to provide the Colville Tribes with a full and complete accounting of the Colville Tribes' trust funds;

(b) Declare that the Defendants have not provided the Colville Tribes with a full and complete accounting of the Colville Tribes' trust funds;

(c) Declare that Defendants' failure to provide the Colville Tribes with a full and complete accounting constitutes of breach of Defendants' fiduciary duties owed to the Colville Tribes;

(d) Enter an injunction requiring the Defendants to provide a full and complete accounting of the Colville Tribes' trust funds within 180 days of entry of such injunction;

(e) Award the Colville Tribes attorneys' fees and costs, including, without limitation, attorneys' fees under the Equal Access to Justice Act and under general principles of law and equity, and the fees and costs of expert assistance; and

(f) Order any and all other relief in favor of the Colville Tribes as the Court deems to be proper and just.

Respectfully submitted,

_____
Allen V. Farber (D.C. Bar No. 912865)
Brian L. Gunn (D.C. Bar No. 465438)
GARDNER, CARTON & DOUGLAS
1301 K Street, N.W., Suite 900, East Tower
Washington, DC 20005-3317
Telephone: (202) 230-5000
Facsimile: (202) 230-5372

Thomas W. Christie (*pro hac vice* pending)
Office of the Reservation Attorney
Confederated Tribes of the Colville
  Reservation
One Colville Street
Nespelem, WA 99155
Telephone: (509) 634-2381
Facsimile: (509) 634-2387

COUNSEL FOR PLAINTIFF

DC01/ 496320.1