**COOPERATIVE AGREEMENT APPLICATION**
U.S. DEPARTMENT OF THE INTERIOR
OFFICE OF HISTORICAL TRUST ACCOUNTING
AND THE
INTERTRIBAL MONITORING ASSOCIATION ON INDIAN TRUST FUNDS

## I.    ADMINISTRATIVE DETAIL

A.    <u>APPROVAL</u>.  Transmitted for approval to the U.S. Department of the Interior ("DOI"), Office of Historical Trust Accounting ("OHTA"), to obtain funds from DOI/OHTA by the Board of Directors of the Intertribal Monitoring Association on Indian Trust Funds ("ITMA") under the foregoing Cooperative Agreement.

B.    <u>ADMINISTRATIVE INFORMATION</u>

1.    Duration:  From the effective date hereof, through September 30, 2005, and is subject to the availability of funds.

2.    Department:  DOI

3.    Program:  OHTA

4.    Program Manager:  OHTA

5.    Financial Assistance Officer:  National Business Center, Denver

6.    Recipient:  ITMA

## II.    STATEMENT OF WORK AND SUPPORTING DOCUMENTATION

A.    <u>AUTHORITY, PURPOSE, AND SCOPE</u>

1.    The authority for this Cooperative Agreement includes 25 U.S.C. §§ 4025, 4045 and 4061, Department of the Interior and Related Agencies Appropriations Act, 2004, P.L. 108-108, Title 1, Continuing Appropriations for Fiscal Year 2005, Pub. L. No. 108-309 (H.J. Res. 107), as amended and extended by H.J. Res. 114 on Nov. 20, 2004, and Secretarial Order 3231, Amendment No. 3, June 28, 2004.  The purpose of this Cooperative Agreement is to provide funding to begin a project ("Project") which will aid DOI/OHTA and each Tribe participating in the Project

("Participating Tribes") to reach agreement about the balances of Tribal Trust Fund accounts of each of those Tribes. DOI/OHTA, ITMA, and the Participating Tribes specifically acknowledge and affirm that no Tribe that participates in any phase of the Project is required, in any manner, to reach agreement with DOI/OHTA about the balance of that Tribe's trust fund account(s) or to settle with DOI/OHTA any claims that the Tribe may have regarding its Tribal Trust Fund account(s).

a.  This Project will consist of two phases. This Cooperative Agreement covers Phase One, but each of the two phases are described herein. Those Tribes that participate in the first phase are called "Phase One Participating Tribes," and those that participate in the second phase are called "Phase Two Participating Tribes."

b.  The purpose of Phase One of the Project is to develop a methodology that will allow the Phase Two Participating Tribes to reconcile, as accurately as possible, Tribal Trust Fund accounts for the period July 1, 1972 through September 30, 1992 ("1972-92 Period"). To develop that methodology, ITMA, the Phase One Participating Tribes, and DOI/OHTA, will examine the Tribal Trust Fund account reconciliation project that was conducted by DOI and its contractor Arthur Andersen LLP for the 1972-92 Period ("Tribal Reconciliation Project" or "TRP"). Phase One will consist of a review and analysis of the Tribal Trust Fund account of the Phase One Participating Tribes for the 1972-92 Period, the documents describing or supporting the transactions that generated or disbursed the funds in those accounts, and the documents describing or supporting the Government's deposit, investment, and disbursement of those trust fund accounts. Among other things, Phase One includes an examination of the assumptions used in the TRP engagement, the contract modifications thereto, and the issue papers that affected the scope of the work for the TRP.

c.  DOI/OHTA agrees that it will provide to ITMA and Phase One Participating Tribes access to or copies of all documents and information reviewed, created, or otherwise used by Arthur Andersen in its TRP and, upon written request and within a reasonable period of time, all other documents which ITMA and Phase One Participating Tribes determine are necessary to fulfill the original scope of work

provisions regarding such document requests). DOI/OHTA's commitment to provide these documents, however, does not obligate DOI/OHTA to provide access to or copies of those documents for which the DOI/OHTA or the Government has asserted a privilege or withheld as proprietary or confidential pursuant to Section II.C.5. herein.

d.    In undertaking Phase One, DOI/OHTA and ITMA intend to assist the Phase One Participating Tribes in their effort to develop a methodology to reconcile, as accurately as possible, their Tribal Trust Fund accounts for the 1972-92 Period. In addition, DOI/OHTA agrees to provide access to or copies of any additional documents and information that ITMA and the Phase One Participating Tribes determine are necessary to develop a proposed methodology to reach agreed-upon balances in Tribal Trust Fund accounts for the 1972-92 Period. The parties understand that the word "methodology" as used herein may mean a single methodology with subparts that may not be applicable to all tribes, or multiple methodologies devised to address aspects of the overall Project. Phase One (and therefore presumably Phase Two) will be limited to the 1972-92 Period, but the parties may agree to consider other time periods at any point in the Project if doing so would promote the purposes of this Project. Of course, to the extent that the resulting methodology will not or does not address pre-1972 periods, any agreed-upon balance for the Period for any Tribal Trust Fund account cannot account for any inaccuracy in the beginning balances as of 1972 or any interest that would have been earned for the 1972-92 Period because of such inaccuracy.

e.    The purpose of Phase Two of the Project is for the Phase Two Participating Tribes to apply the methodology developed in Phase One of the Project and reach an agreement with DOI/OHTA about the balances of the Tribal Trust Fund accounts of the Phase Two Participating Tribes for the 1972-92 Period. Phase Two Participating Tribes could, but are not required to be, the same Tribes as the Phase One Participating Tribes.

2.    The scope of Phase One of this Project shall initially be limited to the review and analysis of all documents created, developed, reviewed, and/or used by Arthur Andersen in its TRP, and all other documents which ITMA and the Phase One Participating Tribes

determine are necessary to develop a methodology to fulfill the
original scope of work of the TRP (which was "to assure that Tribal
Accounts are reconciled as accurately as possible back to the
earliest date practicable," although the parties have agreed to limit
the time period as agreed herein). The review and analysis will
include documents describing transactions which generated such
funds, and documents describing the Government's deposit,
investment, and disbursement of those trust account funds.

After taking into account the relevant benefits and burdens, the
parties agree that the methodology developed in Phase One may
include, with respect to specific classes of tribes or resources,
analysis of source documents (e.g., leases or other documentation
supporting the sale of, for example, gravel or timber) to determine if
the proper amounts were collected by DOI on behalf of a tribe. The
parties understand the burden that would be placed on DOI/OHTA
if many such source documents were requested from DOI/OHTA
and will attempt to focus any such requests in a manner that will not
unreasonably endanger the ability of any party to complete this
Project. Further, the parties agree that the Project shall not include
attempts to determine whether the agreements describing the
transactions generating such funds provided "Fair Market Value" at
the time of their execution or whether underlying trust resources
(e.g., timber or natural gas reserves) were properly managed by the
Government. The parties also expressly agree that the
Government's investments of the trust funds shall be subject to
review and analysis.

## B.    OBJECTIVES AND TASKS

1.    Plan Development and Implementation—"PHASE ONE" OF
PROJECT

For Phase One of the Project, ITMA will develop and implement a
plan for involving representatives, staff, and experts of ITMA and
five to seven Phase One Participating Tribes in activities
culminating in an intensive week-long work session with DOI/OHTA
representatives.

The goal of the work session is to develop a proposed methodology
(or methodologies) designed to be applied in Phase Two that will
allow the parties to account for transactions for the 1972-92 Period
and therefore to reach agreed-upon balances in Tribal Trust Fund
accounts administered by the DOI during the 1972-92 Period.

ITMA's activities and deliverables under this Cooperative Agreement shall include the following:

a.    Scheduling, advertising and hosting an informational session for all potential Participating Tribes to describe the process envisioned by this Project with the goal of enlisting the active and committed participation of at least five and no more than seven Phase One Participating Tribes in the process.

b.    Securing the services of experts, including accounting, legal and other experts in the area of trust fund accounting and management, who would provide information and advice on trust accounting methodologies to Phase One Participating Tribes and ITMA prior to, during, and after the intensive week-long work session.

c.    Scheduling and hosting a planning session with the appropriate number of representatives of Phase One Participating Tribes, including their staff and experts, and the ITMA, including its staff and experts, to:

     (1)    Determine and obtain the information they will require from DOI/OHTA and others in order to meaningfully participate in the intensive work session; and

     (2)    Set parameters for recommendations expected to be developed at the work session described below, including an analysis of the outstanding issues and options for addressing those issues, which will be proposed at the intensive work session.

d.    Providing funding to assist Phase One Participating Tribes, including for their retention of independent experts to advise them, consistent with the approved ITMA Budget attached hereto as Appendix A.

e.    In cooperation with DOI/OHTA representatives and Phase One Participating Tribes, developing the agenda for the intensive week-long work session contemplated herein, which shall include the following:

     (1)    Discussion of the Phase I Participating Tribes' Tribal Trust Fund account information provided previously by DOI/OHTA at the request of Phase One Participating Tribes or ITMA. This information shall

include that contained in the TRP and supporting documents for the 1972-92 Period, and other information requested by Phase One Participating Tribes and their experts, or ITMA and its experts, relating to that time period that are held or maintained by, or otherwise accessible to, DOI/OHTA. DOI/OHTA will, in good faith, assist in working as necessary with other Government agencies and Arthur Andersen LLP to provide access to or copies of all information requested.

(2)    Discussion of the ITMA and Phase One Participating Tribes' recommendations, which will include an analysis of the outstanding issues and options for addressing those issues.

(3)    Development of a methodology designed to be applied in Phase Two that will allow the parties to account for transactions for the 1972-92 Period and therefore to reach agreed-upon balances in Phase Two Participating Tribes' Tribal Trust Fund accounts administered by the DOI during the 1972-92 Period, based upon the Phase One Participating Tribes' examination and analysis of the TRP work and other documents from the 1972-92 Period, as described herein, which the participants deem necessary to develop this methodology.

f.    Developing and disseminating to all Tribes (regardless of their participation in the Project) relevant information regarding the progress of Phase One of the Project, and produce a written report for Congress and all Tribes that details the methodologies resulting from Phase One.

g.    Providing follow-up consultation to the DOI/OHTA on the most effective means of implementing Phase Two efforts, including but not limited to recruitment and selection of Phase Two Participating Tribes and funding for settlement of Tribal accounts whose balances are ultimately agreed upon by the Tribes and DOI/OHTA.

h    Assist in developing an educational effort to raise awareness of the results of the Phase One activities.

Jointly establishing with DOI/OHTA an Oversight Panel consisting of an equal number of ITMA/Tribal members and DOI/OHTA representatives that will address and attempt to resolve disputes and issues that arise during all phases of the Project, including privilege issues. The agreed-upon procedures governing the Oversight Panel will include the use of a third-party mediator, such as a Federal judge, to assist in resolving disputes. If a dispute remains unresolved after referral to the Oversight Panel, including mediation, DOI/OHTA or ITMA (as well as any Participating Tribe) may withdraw from the process without penalty or prejudice.

2. Plan Development and Implementation—"PHASE TWO" OF PROJECT

For "Phase Two" of the Project, ITMA will work with DOI/OHTA and the Phase Two Participating Tribes to apply the methodology that will have been developed in Phase One to the Tribal Trust Fund accounts of the Phase Two Participating Tribes. These Tribes and their experts, in conjunction with ITMA and its experts as needed, will apply the methodology developed in Phase One to attempt to reach agreed-upon balances. ITMA's activities and deliverables will include the following:

a. Determine a process for selecting Phase Two Participating Tribes. The number of Phase Two Participating Tribes selected will depend upon availability of funds.

b. Subcontract with appropriate accounting and legal experts to assist ITMA and Phase Two Participating Tribes in Phase Two. Phase Two Participating Tribes and their experts and ITMA and its experts will conduct this accounting work and submit the results to DOI/OHTA for review, including quality control review; thereafter, the parties will attempt to reach agreement on the account balances.

c. Develop and disseminate to all Tribes (regardless of their participation in the Project) relevant information regarding the progress of Phase Two of the Project.

d. Perform other activities and deliverables to be determined through negotiations with DOI/OHTA, as may be reflected in a subsequent Phase Two Cooperative Agreement.

3.    Conferring with DOI/OHTA

Through the course of the Project to be funded by this Cooperative
Agreement and any subsequent arrangements, ITMA shall maintain
regular and routine communication with authorized representatives
of DOI/OHTA regarding ITMA's progress in performing the activities
described herein.

4.    Timetable for ITMA and DOI/OHTA Performance:  "PHASE ONE"
AND "PHASE TWO"

ITMA will begin work immediately upon execution of this
Cooperative Agreement by both parties, and insofar as is
reasonably possible, to meet the timetable described below. This
timetable represents the good faith estimate of ITMA and
DOI/OHTA of the amount of time required for ITMA's performance
under this Cooperative Agreement. The parties warrant that, if
necessary, the timetable may be reasonably modified to
accommodate the schedules of the Participating Tribes or their
experts, and any other circumstances that may result in
unavoidable delays in the process herein described.

a.    By no later than December 1, 2004, ITMA will host an
informational meeting with all potential Participating Tribes to
describe the processes relating to the Project.

b.    By no later than January 15, 2005, ITMA (with DOI/OHTA)
will establish the Oversight Panel described herein.

c.    By no later than February 28, 2005, ITMA will host a
planning session with the representatives of ITMA and
Participating Tribes, their staff and experts, to determine
preliminarily and obtain the information they will require from
DOI/OHTA and others in order to meaningfully participate in
the intensive work session, and to set parameters for the
kinds of recommendations expected to be developed at the
work session.  Requests for additional documents and
information may be made throughout the process, however,
and it is anticipated that ITMA will submit all Phase One
requests by August 1, 2004.

d.    By no later than May 15, 2005, ITMA and its experts will hold
at least one follow-up meeting with the Phase One
Participating Tribes and their experts, during which
strategies will be developed and vetted, with the objective of

outlining any outstanding issues and the potential methodologies to be proposed at the intensive work session with DOI/OHTA.

e.   By no later than June 30, 2005, ITMA will hold an intensive week-long work session for representatives and experts of ITMA, Participating Tribes and DOI/OHTA. The goal of this work session is to reach consensus on a methodology to be used in Phase Two. The parties may determine that an additional intensive session may be required to complete this task. If so, future proposed deadlines will be adjusted accordingly.

f.   By no later than September 30, 2005, ITMA will produce a detailed description of the method or methodologies and report the results of the Project to all Tribes (regardless of their participation in the Project) and to Congress in order to raise awareness regarding the progress of the Project.

g.   By no later than August 31, 2005, ITMA will have developed and submitted a subsequent Cooperative Agreement application to seek a funding mechanism for the support of ITMA's FY 2006 Phase Two efforts described below. Should an application be approved and if funds are made available, the following activities are intended for Phase Two.

h.   By approximately October 31, 2005, ITMA will begin facilitation of meetings among Tribal leaders, technical experts, and Government representatives to attempt to implement the proposed methodology developed in Phase One. If at all possible, ITMA, DOI/OHTA, and the Participating Tribes will reach agreement about the account balances of the Tribes for other time periods prior to or subsequent to those dates.

Through May 1, 2006, ITMA will take all reasonable steps to facilitate agreement between DOI/OHTA and the Phase Two Participating Tribes about the balances of their Tribal Trust Fund accounts.

By no later than July 1, 2006, ITMA will develop a written education strategy for increasing Congressional awareness of the outcomes of this Project. The strategy will also address the need to make available funding from the Judgment Fund to settle the balances of the Tribal Trust

Fund accounts of the Phase Two Participating Tribes, in
those instances in which DOI/OHTA and the Participating
Tribes have applied the methodology derived in Phase One
of the Project and have reached an agreement about the
balances.

## C.   OTHER PROVISIONS

1.    DOI/OHTA Responsibilities: DOI/OHTA will provide its full
cooperation during the course of the Project so as to enable ITMA
to achieve the goals of this Cooperative Agreement. DOI/OHTA's
responsibilities will consist of the following:

a.    Provide to ITMA, its agents and Participating Tribes access
to and, at ITMA's written request, copies of all books,
records, electronic data, reviews, audits, agreed-upon
procedures reports, issue papers and work papers related to
the performance of this Cooperative Agreement. Any delay
on the part of DOI/OHTA or other Government agency in
providing access to or producing copies of documents or
data to ITMA, the Participating Tribes, or their experts that
results in a delay of the work in the Project may require
adjustment(s) to the schedule, deadlines, and ITMA Budget
set forth herein (upon written approval thereof and subject to
the availability of funds). In these instances, ITMA will not
be held responsible for any consequential failure to meet
other deadlines set for therein.

b.    DOI/OHTA's commitment to provide the necessary
information and documentation, however, does not obligate
DOI/OHTA to provide those documents for which DOI/OHTA
or the Government has asserted a privilege pursuant to
Section II.C.5. below.

c.    To issue, regularly (at least every six months) and in writing,
a joint report by ITMA and DOI/OHTA to the Department of
Justice (DOJ) regarding the progress of this Project. No
such reports will be submitted to the DOJ, however, unless
and until the contents are agreed upon by the parties.
DOI/OHTA may have reason to confer with DOJ at other
times and may do so, but the parties recognize that this
Project has been negotiated primarily between DOI/OHTA
and ITMA and believe that a streamlined approach will
provide the greatest chance of success.

d.     Provide timely payments to ITMA of amounts that have been approved by DOI/OHTA in accordance with ITMA's Budget (Appendix A) and Appendices B & C.

2.     Effective Date:  This Cooperative Agreement shall be effective upon the execution of the Cooperative Agreement by all signatories.  The parties agree that they intend to extend the term of the Project through a subsequent Cooperative Agreement as negotiated and approved.

3.     Assignment, Delegation, Subcontracting:  ITMA may subcontract any part of the work that is required to perform the activities described herein.

4.     Participating Tribes Not Parties to Cooperative Agreement:  The Phase One and Phase Two Participating Tribes are not parties to this Cooperative Agreement, and, accordingly, they are not liable for ITMA's performance under this Cooperative Agreement.

5.     Privilege and Confidentiality Protections:  ITMA and DOI/OHTA recognize that, in the course of conducting the Project, ITMA, the Participating Tribes, and their experts may seek access to, or request copies of, documents and data relating to the TRP that may contain privileged or confidential information.  ITMA and DOI/OHTA will undertake the following processes, in good faith, with respect to the determination and protection of any privileged or confidential information.

a.     After ITMA, the Participating Tribes, or their experts have specified the documents or data to which they seek access or copies, DOI (or the appropriate Government agency having the documents or data) will conduct a timely review of the requested documents or data to determine whether the documents or data are subject to protection under applicable privileges and/or Federal law.  In the event that DOI (or the appropriate Government agency) determines that the requested documents or data contain information that is privileged, confidential, proprietary, and/or otherwise restricted from disclosure by Federal law ("Restricted Information"), DOI (or the appropriate Government agency) will withhold the Restricted Information and provide, in a timely manner, to ITMA, the Participating Tribes, or their experts, with the non-restricted information and a list describing, in appropriate detail, the withheld Restricted Information and the basis for withholding such information.

DOI may provide to ITMA, the Participating Tribes, or their experts, the Restricted Information only if appropriate protections or measures are obtained, such as through releases or waivers from concerned parties and/or through confidentiality and non-disclosure agreements. If necessary, DOI (or the appropriate Government agency) will discuss with ITMA, the participating Tribes, or their experts, the basis or bases for any assertions of disclosure restrictions and seek resolution of any disputes regarding the assertion(s), or refer such assertions as cannot be agreed upon to the Oversight Panel. ITMA states its concern that broad assertions of privilege by the Government could adversely affect its ability to fulfill the purposes of the Project.

b.      If ITMA inadvertently receives documents or data that it knows or reasonably knows to contain Restricted Information, ITMA shall immediately notify the Program Manager.

6.    Record Access, Procedures, and Scope: All requests for access to or copies of records shall be made in writing, addressed to the Program Manager.  The Program Manager will coordinate with the appropriate record custodians for access to or production of the requested information, track the status of requests, and respond to ITMA as soon as practicable, but no later than 30 days after the request is received; if the requested information has not been located or is not available, the Program Manager will advise ITMA of the procedures undertaken and update ITMA on the progress of locating the requested information.

a.      Access to all documents shall be subject to the various rules, policies, and procedures for record access, security clearances, and research applicable to each record facility (which may include supervision by DOI/OHTA or other record custodians, such as personnel of the National Archives and Records Administration) in order to ensure the integrity of all documents and document collections.

b.      To receive access to documents, ITMA, Participating Tribes and their experts and consultants shall (1) sign and acknowledge the rules, policies, and procedures applicable to each record facility, including, without limit, the Research Agreement of the Office of Trust Records attached hereto as Appendix D, and shall (2) not remove any original records from any record storage facility or repository; ITMA shall only

> receive copies of documents, as appropriate and when permissible.

    c.    The parties intend and agree that the Project shall neither relate to nor shall involve any of the individual Indian money (IIM) accounts and records that are subject to the Cobell v. Norton litigation pending in Federal District Court for the District of Columbia (No. 96CV1285).

7.    Work Product and Reports: Any final work product of or final reports generated by DOI/OHTA or ITMA as part of the Project (regardless of form or format) will be deemed equally the property of the DOI/OHTA and ITMA, and shall timely be made available to each party by the other, except for legal or other expert advice (which may be disclosed only at the discretion of the holding party).

8.    No Waiver: The failure of either ITMA or DOI/OHTA to insist on the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions of this Agreement, shall not be construed as thereafter waiving any such terms and conditions. The terms and conditions shall continue and remain in full force and effect as if no forbearance or waiver had occurred.

9.    Payments: ITMA will present detailed requests for payments in accordance with the ITMA Budget (Appendix A) and according to the payment provisions described in Appendix B and Appendix C, which recognize the need for, and authorize, advance payments to ITMA for its activities under this Cooperative Agreement as set forth therein.

10.    Use of Consultants: ITMA may provide funds to consultants, including attorneys at law, for activities referred to in the "Objectives and Tasks" described in Section II.B, above, and for compliance with the administrative requirements of this Cooperative Agreement, such as the financial reporting provisions described in Paragraph II.C.12 below and the ITMA Budget attached hereto as Appendix A.

11.    Travel: All official travel by ITMA, including ITMA Board members, staff, consultants or individuals, as deemed necessary by the Executive Director or the Chairperson of ITMA, and official travel by Participating Tribes' representatives, and experts shall be at standard coach fares or less, and included as appropriate by annual audit of ITMA's travel records by a qualified and

independent certified public accountant pursuant to Paragraph II.C.13 below. ITMA may use Government airfare rates through DOI/OHTA to the fullest extent that may be allowed by law or policy. ITMA travel policies must be consistent with current Government travel regulations, as published in the Federal Register.

12. Financial Cost/Reporting: ITMA will expend the Government-appropriated funds advanced to it exclusively to fulfill its obligations and responsibilities under this Cooperative Agreement. ITMA will provide to the Financial Assistance Officer quarterly reports via SF 270, or as otherwise agreed in writing, within 30 calendar days after the end of each calendar quarter, noting each specific cost incurred for specific tasks accomplished during the reporting period. ITMA will submit an annual financial report via SF 270, or as otherwise agreed in writing, within 90 days after the expiration or termination of this Cooperative Agreement. ITMA may carry over funds to the next fiscal year as necessary for completion of the Phase I activities described in Section II.B above.

13. Annual Audit: ITMA shall make all provisions to ensure an annual, independent audit is conducted on all aspects of program administration and function compliance. Such audit shall be in accordance with OMB Circular A-133 as appropriate. Audits will meet the standards in OMB Circulars A-110, A-122, and A-133. The cost for an annual audit is an allowable cost that will be paid for by the Government as is listed as an itemized expense on the ITMA Budget attached hereto as Appendix A.

14. Cancellation/Suspension: Either DOI/OHTA or ITMA may terminate this Cooperative Agreement upon written notification through the Financial Assistance Officer with 30 days advance notice. In the event the Cooperative Agreement is terminated, funds allocated or advanced for tasks not yet performed shall revert to DOI/OHTA. Tasks which have been performed prior to notice of termination shall be paid out of funds advanced under this Cooperative Agreement. With the exception of activities necessary to terminate the Cooperative Agreement or to preserve information developed hereunder (based on the written agreement of DOI/OHTA and ITMA), no activities will occur once the parties have received notice of termination.

D.   TECHNICAL QUALIFICATIONS REQUIREMENTS

The fulfillment of this Cooperative Agreement will be accomplished by sources of expertise required by Section II.B and Paragraph II.E.3.

E.   PROGRESS REPORT DELIVERABLES

In addition to the other ITMA activities and deliverables in this document, ITMA also shall comply with the following:

1.   Within the first 30 days of the approval of this Cooperative Agreement Application, ITMA will provide the Program Manager and the Financial Assistance Officer with a list of the officers and all member Tribes of ITMA.

2.   No less frequently than with each quarterly report, ITMA will provide the Program Manager with a list of all attendees or Tribes represented at each meeting convened pursuant to Section II.B.

3.   No less frequently than with each quarterly report, ITMA will provide the Program Manager and the Financial Assistance Officer with a listing and the qualifications of all firms and individuals which ITMA plans to utilize as sources of expertise to carry out the activities described in Section II.B. above. Certified Public Accountants shall meet the independence, professional judgment, competence, and other requirements specified in Chapter of 3 the Government Accountability Office's "Government Auditing Standards" (2003 Revision), as may be amended from time to time.

4.   ITMA will provide all reports required under this Cooperative Agreement.

5.   ITMA will provide an annual, written-narrative progress report to the Program Manager and the Financial Assistance Officer no later than 90 days after the close of the fiscal year.

   a.   A narrative description of the work accomplished pursuant to Section II.B above.

   b.   A narrative description of any activities or tasks set forth in Section II.B. above, that was not accomplished, together with a detailed statement of reasons why such objectives or tasks were not accomplished.

      c.     A summary of any problems, delays or adverse conditions encountered in carrying out the purpose of this Cooperative Agreement.

6.     ITMA will provide prompt written notice to the Program Manager and Financial Assistance Officer of any problems, delays, or adverse conditions encountered in carrying out the purpose of this Cooperative Agreement, including written notice of any delay that, if not cured, may require adjustment to the scheduled dates.

## F.   PERIOD OF PERFORMANCE/TERMS OF COOPERATIVE AGREEMENT

The period of performance begins upon the execution of the Cooperative Agreement by both parties as evidenced by execution by all signatories, including the period encompassed by the authorization of pre-award costs, and ends on September 30, 2005. The Period governing this Cooperative Agreement is based upon the Federal Government's Fiscal Year (October 1 through September 30). ITMA and DOI/OHTA recognize, however, that the overall Project contemplated cannot be completed by September 30, 2005, and therefore, ITMA intends to apply for a subsequent Cooperative Agreement (or subsequent Grants) to assure the completion of the Project, and if approved, is subject to the availability of funds. Phase Two is dependent on successful completion of Phase One and will be further described in a subsequent Cooperative Agreement.

## G.   FUNDING COOPERATIVE AGREEMENT

OHTA will make available up to $549,440.22 to ITMA to cover Phase One deliverables and expenses for travel, printing, research, monitoring activities, tribal and other experts, Tribal outreach, electronic communication, distribution of materials and reports, and meetings, etc., as described on the approved ITMA Budget attached hereto as Appendix A. Additional funds through subsequent Cooperative Agreement(s) for the purpose of completing Phase Two shall be the subject of additional discussions between DOI/OHTA and ITMA, shall be the subject of a modification to this Cooperative Agreement or through subsequent Cooperative Agreement(s), and shall be subject to the availability of funds.

## H.   PRE-AWARD COSTS

DOI/OHTA has provided the sum of $100,000 to reimburse ITMA for appropriate, documented pre-award costs under an FY 2004 existing grant from the Office of the Special Trustee for American Indians. Any amounts not required for pre-award costs shall be used by ITMA for

Phase One. The funds awarded under this Cooperative Agreement may be used for Phase One activities incurred between November 1, 2004 and the effective date hereof. The Financial Assistance Officer reserves the right to negotiate additional pre-award costs on a case-by-case basis, as long as they are allocable and reasonable. Pre-award costs exceeding $100,000 will be incurred at ITMA's risk and be subject to negotiation of an acceptable written agreement. Any funding authorized under a pre-award agreement will be considered as part of the total funding agreement and recorded as such to the approved budget.

## I.    DISPUTES

The Financial Assistance Officer is the final decision-maker on any administrative dispute between ITMA and DOI/OHTA under this Cooperative Agreement. However, the parties expressly acknowledge, that this Cooperative Agreement contemplates a complex dispute mechanism process involving Tribal Trust Fund accounts and that the Financial Assistance Officer has no dispute resolution control over any dispute or disagreement regarding the substance of that process (i.e., resolution of trust fund accounting and privilege issues by the oversight panel contemplated in Paragraph II.B.1.i). The parties intend to use every reasonable means available, including the use of a neutral mediator if necessary, to try to avoid terminating this agreement.

## J.    ATTACHMENTS/APPENDICES

The following documents are attached hereto and incorporated by reference as though fully set forth:

Appendix A, ITMA Budget
Appendix B, Special Terms and Conditions
Appendix C, Payments
Appendix D, Research Agreement of the Office of Trust Records

## K.    NOTICE

Any notice under this agreement shall be in writing and delivered in person or by public or private courier service (including the U.S. Postal Service Express Mail) or Certified Mail with return receipt requested or by facsimile. All notices shall be addressed to the parties at the following addresses or at such other addresses as the parties may from time to time direct in writing:

| For ITMA | Name:<br>Address:<br><br>Phone:<br>Fax:<br>E-mail: | Mary Zuni, Executive Director<br>2800 San Mateo Blvd., Suite 105<br>Albuquerque, NM 87110<br>505-247-1447<br>505-247-1449<br>mary@itmatrustfunds.org |
|---|---|---|
| For OHTA | Name:<br><br><br><br>Address:<br><br>Phone:<br>Fax:<br>E-mail: | John H. McClanahan<br>Tribal Trust Accounting Program Manager<br>Office of Historical Trust Accounting<br>U.S. Department of the Interior<br>1801 Pennsylvania Ave., NW, Suite 500<br>Washington, D.C. 20006<br>202-327-5300<br>202-327-5375<br>John_McClanahan@ios.doi.gov |
| For NBC | Name:<br><br><br><br>Address:<br><br>Phone:<br>Fax:<br>E-mail: | Lincoln S. Capstick III<br>Financial Assistance Officer<br>National Business Center<br>U.S. Department of the Interior<br>7301 W. Mansfield Ave. D-2940<br>Denver, CO 80235<br>303-969-5032<br>303-969-5468<br>Lincoln_S_Capstick@nbc.gov |

with a copy to:    OHTA, as above

Any notice shall be deemed to have been given on the earlier of (a) actual delivery or refusal to accept delivery, (b) the date of mailing by certified mail, or (c) the day facsimile delivery is verified.

## ACCEPTANCE

The foregoing Cooperative Agreement between the Intertribal Monitoring Association on Indian Trust Funds and the U.S. Department of the Interior/Office of Historical Trust

Accounting through the National Business Center is accepted as evidenced by the signatures below.

ITMA:    INTERTRIBAL MONITORING ASSOCIATION
         ON INDIAN TRUST FUNDS

         _____    _____
         Executive Director                   Date

NBC:     NATIONAL BUSINESS CENTER

         _____    _____
         Financial Assistance Officer         Date

DOI/OHTA:  OFFICE OF HISTORICAL TRUST ACCOUNTING

         _____    _____
         Executive Director                   Date

## COOPERATIVE AGREEMENT MODIFICATION 0001
U.S. DEPARTMENT OF THE INTERIOR
OFFICE OF HISTORICAL TRUST ACCOUNTING
AND THE
INTERTRIBAL MONITORING ASSOCIATION ON INDIAN TRUST FUNDS

The Parties hereto amend the Cooperative Agreement dated December 6, 2004, as follows:

ADMINISTRATIVE DETAIL

A.     <u>APPROVAL</u>. Transmitted by the Board of Directors of the Intertribal Monitoring Association on Indian Trust Funds ("ITMA") to the U.S. Department of the Interior ("DOI"), Office of Historical Trust Accounting ("OHTA"), for approval to obtain funds from DOI/OHTA under the Cooperative Agreement.

B.     <u>ADMINISTRATIVE INFORMATION</u>

    1.     Duration: From the effective date hereof, through September 30, 2006, and is subject to the availability of funds.

    2.     Department: DOI

    3.     Program: OHTA

    4.     Program Manager: OHTA

    5.     Financial Assistance Officer: National Business Center, Denver

    6.     Recipient: ITMA

    7.     Cooperative Agreement Administrative Identification Number: For the purpose of identifying the Cooperative Agreement in the Federal Finance System (FFS) this action will be numbered as 5652400001.

## STATEMENT OF WORK AND SUPPORTING DOCUMENTATION

A.     <u>AUTHORITY, PURPOSE, AND SCOPE</u>

    There is no change from the original Cooperative Agreement.

B.     <u>OBJECTIVES AND TASKS</u>

    There is no change from the original Cooperative Agreement.

C.    <u>OTHER PROVISIONS</u>

There is no change from the original Cooperative Agreement.

D.    <u>TECHNICAL QUALIFICATION REQUIREMENTS</u>

There is no change from the original Cooperative Agreement.

E.    <u>PROGRESS REPORT DELIVERABLES</u>

There is no change from the original Cooperative Agreement.

F.    <u>PERIOD OF PERFORMANCE/TERMS OF COOPERATIVE AGREEMENT</u>

The period of performance is extended upon the execution of this Amendment by all parties as evidenced by execution by all signatories, and ends on September 30, 2006. The Period governing the Cooperative Agreement is based upon the Federal Government's Fiscal Year (October 1 through September 30). ITMA and DOI/OHTA recognize, however, that the overall Project contemplated cannot be completed by September 30, 2005, and therefore, a modification to the original Cooperative Agreement is being issued to assure the completion of the Project, and if agreed upon, is subject to the availability of funds.  Phase Two is dependent in part on successful completion of Phase One and may be further described in a subsequent Financial Assistance Opportunity.

G.    <u>FUNDING COOPERATIVE AGREEMENT</u>

Additional funds through subsequent Financial Assistance Opportunity(s) for the purpose of completing Phase One or for a Phase Two shall be the subject of additional discussions between DOI/OHTA and ITMA, shall be the subject of a modification to this Cooperative Agreement, or subsequent Financial Assistance Opportunity(s), and shall be subject to the availability of funds.

H.    <u>PRE-AWARD COSTS</u>

There is no change from the original Cooperative Agreement.

I.    <u>DISPUTES</u>

There is no change from the original Cooperative Agreement.

J.    <u>ATTACHMENTS/APPEND ICES</u>

There is no change from the original Cooperative Agreement.

K.    <u>NOTICE</u>

There is no change from the original Cooperative Agreement.

## ACCEPTANCE

The foregoing Cooperative Agreement Modification 0001 between the InterTribal Monitoring Association on Indian Trust Funds and the U.S. Department of the Interior/Office of Historical Trust Accounting through the National Business Center is accepted as evidenced by the signatures below.


**ITMA:**    **INTERTRIBAL MONITORING ASSOCIATION ON INDIAN TRUST FUNDS**

_____        _____

Executive Director                                                            Date


**OHTA:**    **OFFICE OF HISTORICAL TRUST ACCOUNTING**

_____        _____

Executive Director                                                            Date

**COOPERATIVE AGREEMENT MODIFICATION 0002**
U.S. DEPARTMENT OF THE INTERIOR
OFFICE OF HISTORICAL TRUST ACCOUNTING
AND THE
INTERTRIBAL MONITORING ASSOCIATION ON INDIAN TRUST FUNDS

ADMINISTRATIVE DETAIL

A.    APPROVAL. Transmitted for approval to the U.S. Department of the Interior
("DOI"), Office of Historical Trust Accounting ("OHTA"), to obtain funds from
DOI/OHTA by the Board of Directors of the Intertribal Monitoring Association
on Indian Trust Funds ("ITMA") under the foregoing Cooperative Agreement.

B.    ADMINISTRATIVE INFORMATION

    1.    Duration: Unchanged from Modification #001, this agreement continues
through September 30, 2006, and is subject to the availability of funds.

    2.    Department: DOI

    3.    Program: OHTA

    4.    Program Manager: OHTA

    5.    Agreements Officer: National Business Center, Denver

    6.    ˙ Recipient: ITMA

    7.    Cooperative Agreement Administrative Identification Number: For the
purpose of identifying the Cooperative Agreement in the Federal Finance System
(FFS) this action will be numbered as 5652400001. OHTA's Account for the
payment of these funds in FFS is 1060 OTX 01 413A M6.

**STATEMENT OF WORK AND SUPPORTING DOCUMENTATION**

C.    AUTHORITY, PURPOSE, AND SCOPE

    There is no change from the original Cooperative Agreement.

D.    OBJECTIVES AND TASKS

    There is no change from the original Cooperative Agreement except as
indicated in Appendix B.

E.    OTHER PROVISIONS

There is no change from the original Cooperative Agreement.

F.    TECHNICAL QUALIFICATIONS REQUIREMENTS

There is no change from the original Cooperative Agreement.

G.    PROGRESS REPORT DELIVERABLES

There is no change from the original Cooperative Agreement.

H.    PERIOD OF PERFORMANCE/TERMS OF COOPERATIVE AGREEMENT

The period of performance is unchanged for the period as agreed to by all parties in Modification #0001

FUNDING COOPERATIVE AGREEMENT

Additional funds in the amount of $120,000.00 are made available to ITMA from OHTA to be spent in accordance with the approved budget (Appendix A) attached as indicated.

J.    PRE-AWARD COSTS

There is no change from the original Cooperative Agreement.

K.    DISPUTES

The Agreements Officer is the final decision maker on any administrative dispute between ITMA and DOI/OHTA under this Cooperative Agreement. However, the parties expressly acknowledge that this Cooperative Agreement contemplates a complex dispute mechanism process involving Tribal Trust Fund accounts and that the Agreements Officer has no dispute resolution control over any dispute or disagreement regarding the substance of that process (i.e.. resolution of trust fund accounting and privilege issues by the oversight panel contemplated in Paragraph II.B.1.i) of the original Cooperative Agreement. The parties intend to use every reasonable means available, including the use of a neutral mediator if necessary, to try to avoid terminating this agreement.

L.    ATTACHMENTS/APPEND ICES

There is no change from the original Cooperative Agreement.

M.    MONITORING PLAN

A monitoring plan to ensure compliance with the terms and conditions as outlined herein of this modification is required. **ITMA** will expend the federally appropriated funds allocated to it exclusively to fulfill its obligations and responsibilities under this Cooperative Agreement. **ITMA** will provide to the Agreements Officer quarterly reports via SF 269, or as otherwise agreed in writing, within 30 calendar days after the end of each calendar quarter, noting each specific cost incurred for specific tasks accomplished during the reporting month. **ITMA** will submit a financial annual report via SF 269, or as otherwise agreed in writing, within 90 days after the expiration or termination of this Cooperative Agreement. All requests for payments shall be done using an SF 270 form which will show all funding requirements. Said SF 270 should reflect the approved budget expenditures. The Agreements Officer is responsible for adequate oversight of the Cooperative Agreement to ensure all reports are submitted in a timely fashion as outlined herein. Should any party not comply with the requirements of this agreement the Agreement Officer will provide written guidance to said party. Failure to comply with the terms and conditions as outlined herein can result in suspension of payments and other penalties as outlined by the Agreements Officer.

## N.    INDIRECT RATES

Indirect rates are not costed as a separate charge to this grant. All indirect rates have been included in the approved budget and no additional charges relating to indirect rates will be submitted nor accepted in conjunction with this Cooperative Agreement.

## O.    NOTICE

Any notice under this agreement shall he in writing and delivered in person or by public or private courier service (including the U.S. Postal Service Express Mail) or Certified Mail with return receipt requested or by facsimile. All notices shall be addressed to the parties at the following addresses or at such other addresses as the parties may from time to time direct in writing:

For ITMA   Name:    Mary Zuni, Executive Director
           Address:  2800 San Mateo Blvd., Suite 105
                       Albuquerque, NM 87110
           Phone:   505-247-1447
           Fax:      505-247-1449
           E-mail:   mary@itmatrustfunds.org

For OHTA  Name:    John H. McClanahan
                       Tribal Trust Accounting Program Manager
                       Office of Historical Trust Accounting
                       U.S. Department of the Interior

|          | Address:  | 1801 Pennsylvania Ave., NW, Suite 500 |
|          |           | Washington, D.C. 20006                |
|          | Phone:    | 202-327-5300                          |
|          | Fax:      | 202-327-5375                          |
|          | E-mail:   | John_McClanahan@ios.doi.gov           |
| For NBC  | Name:     | Lincoln S. Capstick Ill               |
|          |           | Agreements Officer                    |
|          |           | National Business Center              |
|          |           | U.S. Department of the Interior       |
|          | Address:  | 7301 W. Mansfield Ave. D-2940         |
|          |           | Denver, CO 80235                      |
|          | Phone:    | 303-969-5032                          |
|          | Fax:      | 303-969-5468                          |
|          | E-mail:   | Lincoln_S_Capstick@nbc.gov            |

Any notice delivery or (c) the day shall be deemed to have been given on the earlier of (a) actual refusal to accept delivery, (b) the date of mailing by certified mail, or facsimile delivery is verified.

## P.    OTHER PROVISIONS

Appendixes:

   A.    ITMA's Budget dated May 24, 2006
   B.    Next Steps Document

## ACCEPTANCE

The foregoing Cooperative Agreement Modification #0002 between the InterTribal Monitoring Association on Indian Trust Funds and the U.S. Department of the Interior/Office of Historical Trust Accounting through the National Business Center is accepted as evidenced by the signatures below.

**ITMA:    INTERTRIBAL MONITORING ASSOCIATION ON INDIAN TRUST FUNDS**

Executive Director                              Date    5/26/06

**Page 4 of 5**

**OHTA:    OFFICE OF HISTORICAL TRUST ACCOUNTING**

Executive Director                                    Date

# Intertribal Monitoring Association
## *Proposed Supplemental Budget - OHTA Phase I

*Prepared and Submitted to OHTA*

*24-May-06*

**Appendix A**

| | (A) | (B) | | |
|---|---|---|---|---|
| | Phase I 3/1/06-5/26/06 | Finalize Phase I 5/27/06-9/30/06 | Total | |
| **Revenues** | | | | |
| OHTA Grant Revenue | 41,910 | 78,090 | 120,000 | |
| **Total Revenues** | 41,910 | 78,090 | 120,000 | |
| | | | | |
| **Expenses** | | | | |
| **ITMA Staff** | | | | |
| Executive Director | 4,846 | 9,692 | 14,538 | 1 Month Salary @ 2423.07 bi-weekly |
| Admin/Tech Assistant | 435 | 1,200 | 1,635 | 1 Month Wages @ $15.00/hour, including 6 hours/week overtime/25% (Col B @ 50%) |
| Finance Officer | 1,299 | 1,729 | 3,028 | 1 Month Wages @ $21.63/hour/25% |
| Payroll Taxes | 503 | 965 | 1,468 | Salaries x 7.65% |
| Employee Benefits | 581 | 664 | 1,245 | Health, Dental, Life, Pension |
| **Total ITMA Staff** | 7,664 | 14,250 | 21,914 | |
| | | | | |
| **Operating Expenses** | | | | |
| Supplies | 0 | 500 | 500 | |
| Printing/Copying | 100 | 100 | 200 | |
| Postage/FedEx | 20 | 50 | 70 | |
| Communications | 845 | 1,126 | 1,971 | |
| Computer Maintenance | 150 | 50 | 200 | |
| Office Rental | 2,550 | 3,400 | 5,950 | |
| Utilities | 327 | 450 | 777 | |
| Business Liability Insurance | 45 | 60 | 105 | |
| Equipment Rental | 105 | 372 | 477 | Office Copier, Postage Meter |
| **Total Operating Expenses** | $ 4,142 | $ 6,108 | $ 10,250 | |

**Contractual Services**

| | | | | |
|---|---|---|---|---|
| Contractual - Trust Expert | 7,125 | 20,000 | 27,125 | S. Johnigan @$475./hr (Col B = 42hrs) |
| ITMA Legal Counsel | 1,250 | 10,000 | 11,250 | M. Russell Retainer ($2,500/Mo.) |
| Accounting Consultants | 12,584 | 14,232 | 26,816 | Bland/Ribail $190/hr=75 Hrs OR Accts @ $65/Hr = 2 19 Hrs |
| **Total Contractual Services** | **$ 20,959** | **$ 44,232** | **$ 65,191** | |

**Travel**

| | | | | |
|---|---|---|---|---|
| Staff/Other Travel | 1,000 | 2,500 | 3,500 | (3) Indiv- Trip Spokane |
| Legal Consultant Travel | | 1,000 | 1,000 | 1 Trip Spokane |
| Accountant/Trust Expert Travel | 3,145 | 2,500 | 5,645 | 3/06-Encumbered/1 Trip Spokane |
| Tribal Travel | 5,000 | 6,000 | 11,000 | 3/06-Encumbered/14 Indiv. Spokane |
| Facility Rental | | 1,500 | 1,500 | Spokane Meeting Facility |
| **Total Travel** | **$ 9,145** | **$ 13,500** | **$ 22,645** | |

| | | | |
|---|---|---|---|
| **Total Expenses** | **$ 41,910.00** | **$ 78,090.00** | **$ 120,000.00** |

*Revised 30, 2006*

*May 22, 2006*

Appendix B.

## ITMA and OHTA
## Tribal Trust Funds Cooperative Agreement
## Next Steps

This document describes the activities and anticipated next steps to be supported with the additional Fiscal Year 2006 funding made available by this Amendment to the Cooperative Agreement. It also describes the continued substantial involvement of the Office of Historical Trust Accounting (OHTA).

1.  Goals. The immediate goal is to fulfill the Phase I purposes and objectives of the Cooperative Agreement, which are to develop a methodology to account for and reconcile Tribal Trust Fund accounts for the 1972-1992 Period, thereby facilitating agreed-upon balances for these accounts. An overall future goal is to achieve a mutual settlement with at least one of the Seven Participating Tribes by December 2006 on one or more issues and account balances.

2.  Continued Information Flow to Participating Tribes. OHTA will continue to provide key information to the Seven Participating Tribes while certain aspects of the proposed methodology have more targeted implementation.

    a.  OHTA is assembling revised account lists and charts, 20-Year Tribal Reconciliation Project deliverables, and all follow-on disbursement work for each of the Seven Participating Tribes to the extent applicable.

    b.  OHTA will provide each of the Seven Participating Tribes with electronic transaction databases regarding their respective Tribal Trust Fund Accounts. These databases will be accompanied by a written report describing the results of OHTA's data completeness validation procedures. OHTA currently plans to deliver these materials by June 7, 2006.

    c.  OHTA will provide reservation histories, compiled by an OHTA historian contractor, the Seven Participating Tribes for review and consideration.

3.  Work Session. On June 14, 15 or 16, 2006, ITMA, OHTA, and representatives from the Seven Participating Tribes will participate in a work session in Spokane, Washington, to accomplish the following goals.

    a.  Discuss the Revised Proposed Methodology (OHTA will continue to provide additional comments to ITMA regarding the proposed methodology, and ITMA shall provide a Revised Proposed Methodology before the Work Session).

    b.  Finalize logistical parameters and other expectations for concluding Phase I, such

Page 1 of 3

*May 22, 2006*

as available funding, schedules, and deliverables.

c.  Review OHTA Completeness Pilot.

d.  Understand Electronic Transaction Databases and Calculation of Account Balances.

e.  Review status of Interior's draft rule on Trust Fund Accounting and Appeals and coordinate consultation and public comment periods that may occur in late June or summer 2006.

f.  Merge OHTA and ITMA Sampling Concepts into a Tribal Sample.

    i.   Identify test areas, which may potentially include receipt, disbursement, and investment transactions, as well as exception, deposit timing, and completeness issues.

    ii.  Identify preliminary test procedure for each area.

*ITMA*
*language*

4.  <u>Investments</u>. On June 30, 2006, ITMA will provide a report to OHTA on the results of applying its proposed investment methodology. The report shall include a detailed description of the factors and characteristics that comprise a Tribe's liquidity profile and the process for selecting a corresponding benchmark rate of return.  *OH*

5.  <u>Confirm Review Criteria</u>. On July 7, 2006, ITMA and the Seven Participating Tribes will deliver to OHTA a written report that identifies any concerns or issues with specific Tribal Trust Fund receipt, investment, or disbursement transactions (including any adjustments or exceptions). The report should identify any particular risk areas. The report is to ensure that the Tribal Sample can be designed to address as many concerns and issues as possible.

6.  <u>Tribal Sample</u>. OHTA will review the July 7, 2006 reports and circulate a written Tribal Sample design for review and consideration by ITMA and the Tribes on July 19, 2006.

    a.  The draft design will identify the test areas, recommended sample sizes, the criteria for any transactions that will be tested with certainty, and proposed tasks for pilot implementation using a certain number of transactions concerning one or more Participating Tribe(s).

    b.  A telephone conference will be held on July 21, 2006, so that OHTA can provide an explanatory overview and summary of the proposed design for the Tribal Sample.

*May 22, 2006*

Appendix B.

    c.    ITMA and the Seven Participating Tribes will provide written comments to OHTA on the Tribal Sample on July 27, 2006, and OHTA will circulate a revised draft on August 11, 2006, as necessary.

7.    <u>Work Session</u>. On August 15, 2006, ITMA, OHTA, and the Seven Participating Tribes will have a telephonic work session to accomplish the following goals:

    a.    Solidify Tribal Sample approach and authorize implementation of the pilot.

    b.    Status update on OHTA Completeness Pilot and potential use of Tribal documents.

    c.    Final Discussion and Review of Proposed Methodology.

    d.    Establish future logistical parameters and other expectations for continued efforts to implement Phase I, such as available funds, schedules, and deliverables.

8.    <u>ITMA Approval of Methodology</u>. By August 25, 2006, the Board of ITMA shall review the Phase I Methodology for approval.

9.    <u>Evaluate Results – Achieve Settlement</u>. During August and September 2006, periodic reports and telephone conferences will occur to monitor work, evaluate results, and identify potential settlement opportunities for certain of the Seven Participating Tribes.

10.    <u>Subsequent Cooperative Agreement</u>. It is not currently anticipated that OHTA will make any additional funds available during Fiscal Year 2006. Any additional funding shall be subject to the successful negotiation of a separate written grant or cooperative agreement, and ITMA understands and agrees that any costs that it incurs over and beyond the funding provided by this Amendment shall be at its own expense and risk.

11.    <u>Communication Efforts</u>. On October 25-27, 2006, ITMA and OHTA will update the ITMA board and general membership concerning the activities contemplated in this Amendment. ITMA shall further disseminate information regarding the progress of the project as appropriate.

12.    <u>Proposed Dates.</u> Times as outlined within this document are target dates and may change as the situational requirements change. Any changes to these proposed dates will be made by the mutual consent of ITMA and OHTA.

# United States Department of the Interior

OFFICE OF HISTORICAL TRUST ACCOUNTING
1801 Pennsylvania Avenue, NW, Suite 500
Washington, DC 20006



June 30, 2006

Mary M. Zuni, Executive Director
Inter-Tribal Monitoring Association on Indian Trust Funds
2500 San Mateo Blvd NE - Suite 105
Albuquerque, New Mexico 87110

Re:   Next Steps *as revised from May 22, 06*

Dear Ms. Zuni:

Enclosed is the revised Next Steps document that we have been discussing for some time now. The Next Steps document provides a plan for achieving continued progress on the Cooperative Agreement between the Office of Historical Trust Accounting (OHTA) and ITMA.

The Next Steps document also reflects several substantive comments on the methodology that ITMA proposed with the active participation of experts and of representatives from the Confederated Tribes of the Colville Reservation, Confederated Tribes and Bands of the Yakama Nation, Coeur d'Alene Tribe, Ft. Belknap Indian Community, Nez Perce Tribe, Picuris Pueblo, and the Sac and Fox Nation.

The Next Steps document represents a positive outlook on the proposed methodology and on the overall merit of the project. The ITMA methodology raises legitimate issues and suggests feasible ways for addressing those issues. While additional discussions, active commitment, and work sessions are necessary to better understand the methodology and articulate an acceptable approach, the proposed methodology provides a basis for continuing our cooperative efforts.

OHTA looks forward to continuing its collaborative relationship with ITMA and the participating tribes.

Sincerely,

John H. McClanahan
Tribal Trust Fund Accounting Program Manager

**FedEx** Express    *US Airbill*

RECIPIENT: PEEL HERE

FedEx
Tracking
Number

**8558 3655 6567**

**1 From** This portion can be removed for Recipient's records.

Date 7/5/06    FedEx Tracking Number **8558 3655 6567**

Sender's Name J. McClanahan    Phone 202 327-5300

Company DEPARTMENT OF THE INTERIOR

Address 1801 PENNSYLVANIA AVE NW/    Dept/Floor/Suite/Room

City WASHINGTON    State DC    ZIP 20006-3606

**2 Your Internal Billing Reference**

**3 To**

Recipient's Name Mary M. Zuni    Phone 505 247-1447

Company ITMA

Address 2500 San Mateo Blvd. NE

Suite 105    Dept/Floor/Suite/Room

To request a package be held at a specific FedEx location, print FedEx address here.

Address

City Albuquerque    State NM    ZIP 87110

8558 3655 6567    0324193233

Form
ID No.    **0215**

**4a Express Package Service**

☒ FedEx Priority Overnight    ☐ FedEx Standard Overnight    ☐ FedEx First Overnight

☐ FedEx 2Day    ☐ FedEx Express Saver

**4b Express Freight Service**

☐ FedEx 1Day Freight    ☐ FedEx 2Day Freight    ☐ FedEx 3Day Freight

**5 Packaging**

☐ FedEx Envelope*    ☐ FedEx Pak*    ☐ FedEx Box    ☐ FedEx Tube    ☐ Other

**6 Special Handling**

☐ SATURDAY Delivery

Does this shipment contain dangerous goods?

☒ No    ☐ Yes    ☐ Yes    ☐ Dry Ice    ☐ Cargo Aircraft Only

**7 Payment** Bill to:

☒ Sender    ☐ Recipient    ☐ Third Party    ☐ Credit Card    ☐ Cash/Check

**8 NEW Residential Delivery Signature Options**

☐ No Signature Required    ☐ Direct Signature    ☐ Indirect Signature

Total Packages    Total Weight    Total Charges

519

Recipient's Copy

## NEXT STEPS

### ITMA and OHTA
### Tribal Trust Funds Cooperative Agreement

This describes the activities and anticipated next steps to be supported with the additional Fiscal Year 2006 funding made available by recent amendment to the Cooperative Agreement. It also describes the substantial involvement of the Office of Historical Trust Accounting (OHTA).

1.      Goals. The immediate goal is to fulfill the Phase I purposes and objectives of the Cooperative Agreement, which are to develop a methodology to account for and reconcile Tribal Trust Fund accounts for the 1972-1992 Period, thereby facilitating agreed-upon balances for these accounts. An overall future goal is to achieve a mutual settlement on one or more issues and account balances through application of the Phase I methodology in a potential, future Phase II Cooperative Agreement.

2.      Continue Information Flow to Participating Tribes. OHTA has provided the Seven Participating Tribes with various background materials, including the 20-Year Tribal Reconciliation Project deliverables, account charts, transaction data bases, and reservation histories compiled by an OHTA historian contractor. ITMA may submit written requests to OHTA for additional background information as necessary to fulfill Phase I.

3.      Work Session. On July 18 and 19, 2006, ITMA, OHTA, various experts and consultants, and the designated representatives for the Seven Participating Tribes will participate in a work session in Spokane, Washington, to accomplish the following goals. In preparation for the meeting, ITMA and the Seven Participating Tribes should continue their review of the information provided by OHTA to develop an outline for the reports described in paragraph 4.

       a.      Review and Understand these Next Steps.

       b.      Understand Electronic Transaction Databases and Calculation of Account Balances. Access databases containing trust transactions have been provided to the Seven Participating Tribes and ITMA. The databases will facilitate transaction analysis and the design of test procedures.

       c.      Discuss and Improve the Proposed Methodology, focusing on the following areas.

             i.      Review OHTA Completeness Pilot. The ITMA methodology appropriately recognizes the need to test the completeness of account postings in relation to contractually-required amounts. Indeed, OHTA is exploring potential methods to test completeness, and OHTA prefers that ITMA and the Seven Participating Tribes consider those methods with OHTA and potentially incorporate them into the methodology. Please refer to Attachment A for additional details about the OHTA Completeness Pilot.

ii.  Merge OHTA and ITMA Sampling Concepts into a Tribal Sample.

    (1)  Identify test areas, which may potentially include receipt, disbursement, and investment transactions, as well as exception, deposit timing, and completeness issues.

    (2)  For each test area, identify the steps, documents, and information that are necessary perform each test.  OHTA, ITMA, and the Seven Participating Tribes will develop these components of the Tribal Sample in a collaborative fashion.  This effort will be facilitated greatly by the reports and summary called for in paragraph 4 below.  Moreover, OHTA is making its statistical contractor, the National Opinion Research Center at the University of Chicago (NORC), available to help design and document the test, which can be performed by other OHTA contractors and carefully evaluated by NORC.

d.  Review status of Interior's draft rule on Tribal Trust Fund Accounting, consider relation of the Proposed Methodology to the draft rule, and discuss general Tribal consultation sessions that may occur in August 2006.

e.  Review logistical parameters and other expectations for concluding Phase I, such as available funding, schedules, and deliverables.  Identify additional next steps, as appropriate.

4.  Confirm Review Criteria and Scopes.  This section describes an approach for generating a report that better describes the issues underlying the Proposed Methodology and can be used to define the scope of the Proposed Methodology.

a.  With expert assistance, the Seven Participating Tribes have been examining the various components of the 20-Year Tribal Reconciliation Project, including the agreed upon procedures reports, account statements, and supporting documents. Additional charts and databases also have been provided for examination by the Seven Participating Tribes and their experts.  An important purpose of these examinations was to obtain findings that would provide a basis to develop a methodology.

b.  It is appropriate to continue these examinations and generate reports that describe specific issues and concerns arising from the examinations.  The Proposed Methodology identified several "to do" tasks with brackets that should be pursued.  The reports also are to ensure that the Tribal Sample is designed to efficiently address concrete concerns and issues.

c.  Accordingly, on August 4, 2006, ITMA and the Seven Participating Tribes will deliver written reports to OHTA that identify any concerns or issues with specific Tribal Trust Fund receipt, investment, or disbursement transactions (including any adjustments or exceptions) for each of the Seven Participating Tribes.  The reports

should be accompanied by a report that summarizes issues raised in the seven specific reports and places the issues into logical categories so that appropriate tests can be developed. The categories and issues should be ranked in terms of risk, relevance, and materiality. In part, the individual reports and overall summary will identify the "findings that the Tribal participants believe will be able to use in negotiations . . . ." Moreover, by categorizing and evaluating the issues in terms of relevance, risk, and materiality, the intended scope of the methodology can be defined. By understanding the intended scope of the Proposed Methodology – including the Tribal Sample and the concrete issues to be addressed or answered by testing – pilots consistent with Phase I can occur quickly, which, in turn, will facilitate easier transition to comprehensive implementation of the Proposed Methodology through a potential Phase II.

5.    Investments. On August 4, 2006, ITMA and the Seven Participating Tribes will provide a revised investment methodology to OHTA. While OHTA recognizes that something other than the tribal benchmark could certainly be considered in resolving investment issues, additional detail and explanation is required for the investment portion of the Proposed Methodology. There are several areas that merit additional discussion and articulation. It would be especially helpful if the methodology recognized a distinction between the concept of investment accounting and investment performance and how such distinction might influence the methodologies. Moreover, there should be a detailed description of the processes and standards for selecting a corresponding benchmark rate of return, including the factors and characteristics that comprise a Tribe's liquidity profile. The reference to "any financial reports maintained . . . about investments held at reporting periods" is quite broad; perhaps cash flow patterns are more relevant to a liquidity profile, as are income flows and assets that a tribe may hold outside of the Tribal Trust Fund, and those could be mentioned. If experts are going to be employed, the methodology should identify with much greater detail the information that would be evaluated and the tangible results of the work to be performed. Although the Proposed Methodology indicates that actual data regarding one of the Seven Participating Tribes was used to develop the approach, such data or the results are not clearly reflected.

6.    Tribal Sample. OHTA will review the August 4, 2006, reports and summary described in paragraph 4 above and respond with a written Tribal Sample design for review and consideration by ITMA and the Tribes on August 25, 2006. It is hoped that the feasibility of the Tribal Sample can be confirmed through pilot work that involves transactions of one or more of the Seven Participating Tribes.

    a.    The draft design will identify the test areas, recommended sample sizes, the criteria for any transactions that will be tested with certainty, and proposed tasks for pilot implementation using a certain number of transactions concerning one or more of the Seven Participating Tribes.

    b.    A telephone conference will be held on August 30, 2006, so that OHTA can provide an explanatory overview and summary of the proposed design for the Tribal Sample.

       c.      ITMA and the Seven Participating Tribes will provide written comments to OHTA on the Tribal Sample by September 18, 2006, and OHTA will circulate a revised draft on September 15, 2006, as necessary.

7.     <u>Work Session</u>.  On September 27, 2006, ITMA, OHTA, and the Seven Participating Tribes will have a telephonic work session to accomplish the following goals:

       a.      Solidify the Tribal Sample approach and direct pilot work to test the feasibility of the Tribal Sample.

       b.      Status update on OHTA Completeness Pilot and potential use of Tribal documents for the Completeness Pilot.

       c.      Final Discussion and review of Proposed Methodology, including investments.

       d.      Establish future logistical parameters and other expectations associated with an implementation of Phase I, such as available funds, schedules, and deliverables.

8.     <u>ITMA Approval of Methodology</u>.  By October 12, 2006, the Board of ITMA shall review the Phase I Methodology for approval.

9.     <u>Evaluate Results – Potential for Settlement</u>.  During September and October 2006, periodic reports and telephone conferences will occur to monitor pilot work, evaluate results, and remain cognizant of potential settlement opportunities that could demonstrate the success of the project.

10.    <u>Subsequent Cooperative Agreement</u>.  It is not currently anticipated that OHTA will make any additional funds available during Fiscal Year 2006.  Any additional funding shall be subject to the successful negotiation of a separate written grant or cooperative agreement, and ITMA understands and agrees that any costs that it incurs over and beyond the funding provided by this Amendment shall be at its own expense and risk.  ITMA will promptly advise OHTA if there are any unforeseen circumstances that will prevent the timely accomplishment of the next steps identified in this document.

11.    <u>Communication Efforts</u>.  On October 25-27, 2006, ITMA and OHTA will update the ITMA board and general membership concerning the activities contemplated in this Amendment. ITMA shall further disseminate information regarding the progress of the project as appropriate.

## Colville Completeness Pilot Test

The Office of Historical Trust Accounting (OHTA) was created to provide historical accountings of individual Indian money (IIM) and Tribal Trust Fund accounts. This paper summarizes a project that OHTA is performing in support of OHTA's historical accounting mission.

### Background

Simply stated, OHTA's mission is to compile, check, and provide historical accounting records to individual Indians and Tribes in the form of Historical Statements of Account. Information about the results of performing various reconciliation processes will accompany the Statements. OHTA's reconciliation processes are intended to identify key characteristics of the Statements.

This summary focuses on completeness testing, one of the reconciliation processes OHTA uses. OHTA uses other reconciliation processes, such as systems tests, interest recalculation tests, and accuracy tests. Accuracy testing is mentioned in particular, however, to illustrate why completeness testing is an appropriate, additional reconciliation process to consider.

### Accuracy Testing

OHTA has been testing the accuracy of the receipt and disbursement transactions recorded in IIM and Tribal accounts by examining the documents supporting these transactions. To perform this work, OHTA locates the paper documents that are the basis for the transactions recorded in the accounts and notes inconsistencies. This approach is sometimes referred to as an "upstream" approach because OHTA starts with transactions recorded in an account and then works back, or upstream, to gather and analyze documents created at the time of the actual recording or posting of the transactions. In other words, accuracy testing involves a check whether the transactions appearing in an account record are consistent with the supporting documents and calculations that led to the transactions in that account. Such supporting documents, often in paper form, evidence whether the trust fund activity appearing in the account was recorded accurately.

OHTA is not only assessing the accuracy of the transactions recorded in an account but also is conducting additional tests to ensure that the transactions recorded in the account fairly comprise or represent the trust funds generated from trust lands. By performing a second, "downstream" approach, OHTA may better learn whether transactions are missing from the account records. Consequently, to evaluate whether accounts omit income that should have been posted in the account, OHTA is pursuing completeness testing as summarized below.

### Completeness Testing

As part of the reconciliation processes, OHTA will assess whether the receipt transactions recorded to IIM and Tribal accounts – in particular, the receipts recorded for income received from activity on trust land – are complete. Income from trust land includes oil and gas royalties, timber stumpage sales, farming/grazing permit fees, and land sales. OHTA is conducting pilot

tests to determine the best way to test the completeness of recording or posting of trust income. The term completeness is used to represent the degree to which money that was or should have been collected actually appears in the account records or bookkeeping or accounting systems.

Initially, OHTA focused its completeness pilot testing on IIM accounts and trust tracts owned by individual Indians. OHTA performed a pilot test by randomly selecting individual trust tracts and determining the income activity on those selected trust tracts. This pilot test was limited to income activity from the 1980s to 2000. OHTA is using the information collected for this pilot test to develop the procedures necessary to determine whether income activity was recorded in the transactional data.

OHTA determined that a subsequent "proof of concept" pilot should be conducted to confirm the feasibility of the initial pilot. In choosing a location for the subsequent pilot, OHTA sought a reservation with varied income sources and increased complexity. The Colville Reservation was selected because of its size, number of allotments, and varied income sources, including timber sales, land sales, and rights-of-way.

Meanwhile, the need to verify the completeness of Tribal Trust Fund account receipts from productive assets (e.g., land) arose in the cooperative effort among the Inter Tribal Monitoring Association (ITMA), OHTA, and Seven Participating Tribes, including the Confederated Tribes of the Colville Reservation (Colville Tribe). The methodology proposed by ITMA and the Seven Participating Tribes supports the use of sampling and discusses various options for identifying income activity, e.g., determining the population of leases, contracts, etc.

Given the interest of ITMA and the Seven Participating Tribes in completeness testing, the OHTA Tribal Program asked OHTA Management to include tribal tracts within the subsequent pilot at Colville. The purpose of this request was to obtain information that could be used by ITMA and the Seven Participating Tribes in developing methods for assessing completeness. The Tribal Program sought to leverage OHTA's limited resources to create quick, tangible results for the benefit of ITMA and the Seven Participating Tribes. OHTA will achieve significant efficiencies by addressing Tribal tracts at the same time it addresses individual allotted tracts.

Accordingly, OHTA expanded its Colville Completeness Pilot Test to include Tribal land in addition to individual lands. To conduct this pilot, OHTA will select a random sample of individual Indian owned trust tracts and a separate random sample of Tribal owned trust tracts. OHTA will then visit the Colville Agency of the Bureau of Indian Affairs to determine and document, for the selected tracts, all activity that would have generated income between the 1980s and 2000. Based on this information, OHTA will obtain the indicated leases or contracts (or a sample of the indicated activity) and determine whether the associated income activity was reflected in the electronic transactional databases.

# COOPERATIVE AGREEMENT MODIFICATION #0003
## U.S. DEPARTMENT OF THE INTERIOR
## OFFICE OF HISTORICAL TRUST ACCOUNTING
## AND THE
## INTERTRIBAL MONITORING ASSOCIATION ON INDIAN TRUST FUNDS
## JUNE 30, 2006

## Purpose and Scope:

As requested by OHTA, and agreed to by ITMA, this amendment is to make available additional funds in the amount of five thousand dollars ($5000.00) to ITMA's Cooperative Agreement #25652400001.

The purpose of this amendment is to assist the Department of Interior in coordinating and securing meeting facilities for the DOI Tribal Consultations on the DOI proposed regulatory changes to the "Trust Funds and Accounting Appeals" process.  The sessions are scheduled for Albuquerque, NM and Portland, OR.

This in addition to the original statement of work in the Cooperative Agreement from OHTA to ITMA.

## ACCEPTANCE

The foregoing Cooperative Agreement Modification 0003 between the InterTribal Monitoring Association on Indian Trust Funds and the U.S. Department of the Interior/Office of Historical Trust Accounting through the National Business Center is accepted as evidenced by the signatures below.

**ITMA:**    **INTERTRIBAL MONITORING ASSOCIATION ON INDIAN TRUST FUNDS**

_____    _____

Executive Director                                    Date


**OHTA:**    **OFFICE OF HISTORICAL TRUST ACCOUNTING**

_____    _____

Executive Director                                    Date

# FY 2007
## Cooperative Agreement
## 5652400001

**U.S. DEPARTMENT OF THE INTERIOR, OFFICE OF HISTORICAL TRUST ACCOUNTING**
and the
**INTERTRIBAL MONITORING ASSOCIATION on Indian Trust Funds**
**Modification #0004**

## I.    ADMINISTRATIVE DETAIL

A. AGREEMENT APPROVAL.  Transmitted for approval to the U.S. Department of the Interior ("DOI"), Office of Historical Trust Accounting ("OHTA"), to obtain funds from DOI/OHTA by the Board of Directors of the Intertribal Monitoring Association on Indian Trust Funds ("ITMA") under the Cooperative Agreement dated December 6, 2004, subsequent modifications and by this modification.

B. ADMINISTRATIVE INFORMATION FOR THE COOPERATIVE AGREEMENT

1.    Duration:  This Modification shall be effective upon the execution by all signatories, and shall run through September 30, 2007 and is subject to availability of funds.

2.    Department:  U.S. Department of the Interior (DOI)

3.    Program: Office of Historical Trust and Accounting (OHTA)

4.    Program Manager/Agreements Officer Technical Representative (AOTR): Office of Historical Trust and Accounting (OHTA)

5.    Financial Assistance Office/Agreements Officer (AO):  DOI, National Business Center (NBC), Acquisition and Property Management Division, Denver Branch

6.    Recipient: Intertribal Monitoring Association on Indian Trust Funds (ITMA)

C. FINANCIAL INFORMATION

Funding Information:

| | |
|---|---|
| Account Number: | 1060 OTX 01 413A M6 |
| Job Number: | OHT65A |
| ALC Code: | 1401001 |
| Organization Code: | 6524 |

Appropriation Number:      **AAACS**
Allotment Number:          **NA**
Requisition Number:        **NA**
Amount:                    **$100,000.00**

This Modification is subject to the availability of funding for this modification's period of performance and any successive period (s) should any successive period (s) occur.

For the purpose of Identification this Cooperative Agreement is numbered and identified as:

**5652400001**

## II.    STATEMENT OF WORK AND SUPPORTING DOCUMENTATION

### A. AUTHORITY, PURPOSE AND SCOPE

The authority for this Modification is: unchanged from the original Cooperative Agreement, however, this Modification is based on the availability of funds.

The purpose of this Modification is to update the Statement of Work/Next Steps (See the Statement of Work/Next Steps - Appendix G) for the Cooperative Agreement.

## III.   OBJECTIVES AND TASKS

There is no change from the original Cooperative Agreement except as indicated in Appendix G.

## IV.    Special Projects

No Change from the original Cooperative Agreement.

## V.     Miscellaneous Services

No Change from the original Cooperative Agreement.

## VI.    Special Provisions

1. Use of Consultants: ITMA may provide funds to consultants, including attorneys at law, for activities referred to in the "Objectives and Tasks" described in Section III, above, and for compliance with the administrative requirements of this Cooperative Agreement, such as but not limited to, the financial reporting provisions described in Section IV, 4, below.

## VII.    TECHNICAL QUALIFICATIONS REQUIREMENTS

See the Statement of Work/Next Steps - Appendix G. Otherwise no other change from the original Cooperative Agreement.

## VIII.    PROGRESS REPORTS – DELIVERABLES

See the Statement of Work/Next Steps - Appendix G. Otherwise no other change from the original Cooperative Agreement.

## IX    ACCEPTANCE OF DELIVERABLES

See the Statement of Work/Next Steps - Appendix G. Otherwise no other change from the original Cooperative Agreement.

## X.    PERIOD OF PERFORMANCE/TERMS OF THE COOPERATIVE AGREEMENT

This Cooperative Agreement shall be effective upon the execution of the modification by all signatories, and shall run through September 30, 2007 and is subject to availability of funds.

## XI.    FUNDING COOPERATIVE AGREEMENT

OHTA will make available for this Modification an additional $100,000.00 from its annual budget request for this purpose to cover deliverables and expenses for travel, printing, research, monitoring activities, tribal outreach, electronic communication, distribution of materials and reports, and meetings, Purposes, Objectives or Tasks as outlined in Appendix G. Otherwise no other change from the original Cooperative Agreement.

## XII.    PRE-AWARD COSTS

No Pre-Award costs are authorized for this Modification.

## XIII.    DISPUTES

The Agreements Officer is the final decision maker on any administrative dispute between ITMA and OST under this Cooperative Agreement. However, the parties expressly acknowledge that this Cooperative Agreement contemplates a complex dispute mechanism process involving Tribal Trust fund accounts and that the Agreements Officer has no dispute resolution control over any dispute or disagreement regarding the substance of that process (i.e., resolution of Tribal Trust Fund accounting and other issues as they may arise). The parties intend to use every reasonable means available, including the use of a neutral mediator if necessary, to try to avoid terminating this Modification.

If ITMA wishes to appeal an adverse action, it must be done within 30 days from the date of receipt of the determination letter. Failure to meet this timeframe will result in ITMA's losing its original rights.

## XIV. MONITORING PLAN

A monitoring plan to ensure compliance with the terms and conditions as outlined herein of this Modification is required by the Agreements Officer. ITMA will expend the federally appropriated funds allocated to it exclusively to fulfill its obligations and responsibilities under this Cooperative Agreement. ITMA will provide to the Agreements Officer quarterly reports via SF 269, or as otherwise agreed in writing, within 30 calendar days after the end of each calendar quarter, noting each specific cost incurred for specific tasks accomplished during the reporting month. ITMA will submit a financial annual report via SF 269, or as otherwise agreed in writing, within 90 days after the expiration or termination of this Cooperative Agreement. All requests for payments shall be done using an SF 270 form which will show all funding requirements. Said SF 270 should reflect the approved budget expenditures. The Agreements Officer is responsible for adequate oversight of the Cooperative Agreement to ensure all reports are submitted in a timely fashion as outlined herein. Should any party not comply with the requirements of this agreement the Agreement Officer will provide written guidance to said party. Failure to comply with the terms and conditions as outlined herein can result in suspension of payments and other penalties as outlined by the Agreements Officer.

## XV. INDIRECT RATES

Indirect rates are not costed as a separate charge to this Modification. All indirect rates have been included in the approved budget and no additional charges relating to indirect rates will be submitted nor accepted in conjunction with this Cooperative Agreement.

## XVI. ATTACHMENTS: (All attachments as outlined in the original Cooperative Agreement.)

Appendix A. SF424 Application for Federal Assistance, Forms A & B
Appendix B. ITMA Modification #0004 Budget
Appendix C. Special Terms and Conditions
Appendix D. Payments
Appendix E. ITMA Tribal Membership
Appendix F. Financial Management Systems Form
Appendix G. Statement of Work/Next Steps

## XVII. NOTICE

Any notice under this agreement shall be in writing and delivered in person or by public or private courier service (including the U.S. Postal Service Express Mail) or Certified Mail with return receipt requested. All notices shall be addressed to the parties at the following addresses or at such other addresses as the parties may from time to time direct in writing.

| For OHTA | Name: | John H. McClanahan |
|---|---|---|
| | | Agreements Officer Technical Representative (AOTR) |
| | | Tribal Trust Accounting Program Manager |
| | | Office of Historical Trust Accounting |
| | | U.S. Department of the Interior |
| | Address: | 1801 Pennsylvania Ave., NW, Suite 500 |
| | | Washington, D.C. 20006 |
| | Phone: | 202-327-5300 |
| | Fax: | 202-327-5375 |
| | E-mail: | John_McClanahan@ios.doi.gov |
| | | |
| For ITMA | Name: | Mary Zuni, Executive Director |
| | Address: | 2800 San Mateo Blvd., Suite 105 |
| | | Albuquerque, NM 87110 |
| | Phone: | 505-247-1447 |
| | Fax: | 505-247-2449 |
| | E-mail: | itma@itmatrustfunds.org |
| | | |
| For NBC | Name: | Lincoln S. Capstick III |
| | | Agreements Officer |
| | | National Business Center |
| | | U.S. Department of the Interior |
| | Address: | 7301 W. Mansfield Ave. |
| | | Denver, CO 80235 |
| | Phone: | 303 969 5032 |
| | Fax: | 303 969 5468 |
| | E-mail: | Lincoln_S_Capstick@nbc.gov |

Any notice shall be deemed to have been given on the date of (a) actual delivery or refusal to accept delivery, (b) the date of mailing by certified mail, or (c) the day delivery is verified.

## ACCEPTANCE

The foregoing FY 2007 Cooperative Agreements Modification #0004 between the Intertribal Monitoring Association on Indian Trust Funds and the U.S. Department of the Interior, Office of Historical Trust and Accounting is accepted as evidenced by the signatures below.

Mary Zuni
Executive Director
INTERTRIBAL MONITORING ASSOCIATION ON INDIAN TRUST FUNDS

12/1/06
Date

Bert Edwards
Executive Director
OFFICE OF HISTORICAL TRUST AND ACCOUNTING

12/5/06
Date

Appendix G.

## ITMA and OHTA
## Tribal Trust Funds Cooperative Agreement
## Statement of Work/Next Steps

Appendix G describes the activities and anticipated next steps to be supported with the additional Fiscal Year 2007 funding made available by Modification #0004 to the Cooperative Agreement. It also describes the continued substantial involvement of the Office of Historical Trust Accounting (OHTA).

1.    Goals. The immediate goal is to fulfill the Phase I purposes and objectives of the Cooperative Agreement.

2.    General. OHTA will provide up to $100,000 to support certain Intertribal Monitoring Association for Indian Trust Funds' (ITMA) activities through the end of the fiscal year, upon certain conditions described in detail below. Three major areas of the methodology remain outstanding: investments, disbursements, and completeness. A portion of the agreed-upon funding is for these three major areas. Notwithstanding any other provision, OHTA shall not be required to pay for work that has not been performed. In the event any of the work on the three major areas costs less than projected (as projected in ITMA's Budget and reflected throughout Appendix G), OHTA and ITMA may discuss other appropriate uses for the unexpended funds. For example, according to the ITMA Budget (see Appendix B, attached hereto), the contractual services cost for the delivery of the investments draft is $12,145. However, if the actual cost for this deliverable should be less than the projected amount, OHTA will only be required to make payment to ITMA for the actual costs and any remaining funds not required for that area may be reallocated to other purposes (e.g., for ITMA grant training) following discussions between OHTA and ITMA.

ITMA also requests funds for operating expenses and travel. According to ITMA's proposed budget, operating expenses will be $13,751 and travel expenses will be $26,888. Before OHTA will fund ITMA's operating expenses and travel expenses, ITMA will provide OHTA with detailed requests for payments in accordance with the ITMA Budget (see Appendix B, attached hereto) and according to the payment provisions described in Appendix D and Appendix C of the original Cooperative Agreement.

3.    Continued Information Flow to Participating Tribes. OHTA will continue to provide key information to the Seven Participating Tribes.

a.    OHTA will provide reservation histories, compiled by an OHTA historian contractor, to certain of the remaining Seven Participating Tribes (Confederated Tribes of the Colville Reservation, Picuris Pueblo, and Sac & Fox Nation of

*December 1, 2006*

Oklahoma) and ITMA for review and consideration.

b.    OHTA will continue to review the questions presented by the Picuris Pueblo in the report dated July 17, 2006, and will seek to respond by December 13, 2006.

c.    OHTA will provide each of the Seven Participating Tribes with their tribe's MoneyMax Investment Reports.

d.    OHTA will provide updates related to the on-going Colville Completeness Pilot.

4.    <u>Investments</u>. OHTA will provide ITMA with funding after OHTA receives a revised investment methodology from ITMA. OHTA and ITMA will work together to reach agreement in this area according to the schedule described below.

a.    On December 6, 2006, ITMA will provide a revised draft to OHTA. Following OHTA's receipt of this draft and required payment forms as per the original Cooperative Agreement and this Amendment, OHTA will make payment to ITMA in the amount not to exceed $12,145.

b.    On December 13 & 14, 2006, OHTA, ITMA, and the Seven Participating Tribes will meet in Albuquerque, New Mexico, to discuss the investment, disbursement, and completeness areas. OHTA will provide ITMA with additional comments on the revised investment methodology.

c.    As necessary, ITMA will provide OHTA with a revised draft on January 3, 2007.

d.    A teleconference will be scheduled on January 17, 2007, between ITMA and OHTA to discuss final comments on the investment methodology.

e.    On January 31, 2007, OHTA, ITMA, and the Seven Participating Tribes will meet to discuss the completeness pilot and achieve understanding and agreement on the investment and disbursement sections of the methodology.

5.    <u>Disbursements</u>. OHTA will provide ITMA with funding after OHTA receives substantive feedback from ITMA concerning the draft disbursement sample. OHTA and ITMA will work together to reach agreement in this area according to the schedule described below.

a.    On December 8, 2006, ITMA will provide substantive comments to OHTA. Following OHTA's receipt of these comments and required payment forms as per the original Cooperative Agreement and this Amendment, OHTA will make payment to ITMA in an amount not to exceed $47,169.

*December 1, 2006*

Appendix G.

    b.      On December 13 & 14, 2006, OHTA, ITMA, and the Seven Participating Tribes will meet in Albuquerque, New Mexico, to discuss the investment, disbursement, and completeness areas.

    c.      A teleconference will be scheduled on January 3, 2007, between ITMA and OHTA to discuss status of disbursement design.

    d.      On January 17, 2007, OHTA will provide ITMA with a revised disbursement sample.

    e.      On January 31, 2007, OHTA, ITMA, and the Seven Participating Tribes will meet to discuss the completeness pilot and achieve understanding and agreement on the investment and disbursement sections of the methodology.

6.      <u>Completeness.</u> ITMA would like OHTA to authorize completeness pilot work to demonstrate ITMA's approach to completeness. Before OHTA could consider such pilot work, ITMA must provide a plan that clearly defines the approach and the associated end products. Such a plan shall include the following minimum elements: tribe to be involved; type and number of documents to be gathered; personnel to be involved and hours to be expended; total cost; schedule; and the resulting deliverables and potential findings or conclusions. The plan shall clarify whether ITMA envisions a modeling, estimation, document collection, or other approach. ITMA should begin to develop the pilot plan after ITMA addresses the first two areas described above (investments and disbursements). ITMA will issue at least one draft of the pilot plan to OHTA. OHTA will provide funding to ITMA after OHTA receives the first draft and required payment forms as per the original Cooperative Agreement and this Amendment, in an amount not to exceed $26,935. OHTA will provide comments on the first draft and determine whether a second draft is merited or is feasible given available funding. If OHTA directs ITMA to prepare a second draft, OHTA will provide additional funding to ITMA for the second draft after it is received in an amount to be determined, provided that funds are available. It is currently estimated that a second draft may cost $24,000.

    a.      On January 10, 2007, ITMA will provide the first draft of the completeness pilot plan to OHTA. Following OHTA's receipt of this plan and required payment forms as per the original Cooperative Agreement and this Amendment, OHTA will make payment to ITMA in an amount not to exceed $26,935.

    b.      On January 29, 2007, OHTA will provide initial comments on the first draft to ITMA.

    c.      On January 31, 2007, OHTA, ITMA, and the Seven Participating Tribes will meet

*December 1, 2006*

to discuss the completeness pilot and achieve understanding and agreement on the investment and disbursement sections of the methodology.

7.    ITMA Approval of Methodology.  By February 21, 2007, the Board of ITMA shall review the Phase I Methodology for approval in whole or part.

8.    Subsequent Cooperative Agreement.  It is not currently anticipated that OHTA will make any additional funds available during Fiscal Year 2007.  Any additional funding shall be subject to the successful negotiation of a separate written grant or cooperative agreement, or modification to an existing award, and ITMA understands and agrees that any costs that it incurs over and beyond the funding provided by this Amendment shall be at its own expense and risk.

9.    Proposed Dates.  Times as outlined within this document are target dates and may change as the situational requirements change. Any changes to these proposed dates will be made by the mutual consent of ITMA and OHTA.

# COOPERATIVE AGREEMENT MODIFICATION #005

## U.S. DEPARTMENT OF THE INTERIOR
## OFFICE OF HISTORICAL TRUST ACCOUNTING AND THE
## INTERTRIBAL MONITORING ASSOCIATION ON INDIAN TRUST FUNDS

### ADMINISTRATIVE DETAIL

A.    APPROVAL.

Transmitted for approval to the U.S. Department of the Interior ("DOI"), Office of Historical Trust Accounting ("OHTA"), to obtain funds from DOI/OHTA by the Board of Directors of the Intertribal Monitoring Association on Indian Trust Funds ("ITMA") under the foregoing Cooperative Agreement.

### B.    ADMINISTRATIVE INFORMATION

1.    Duration: Unchanged from Modification #004, this agreement continues through September 30, 2007, and is subject to the availability of funds.

2.    Department: DOI

3.    Program: OHTA

4.    Program Manager: OHTA

5.    Agreements Officer: This amendment changes the Agreements Officer to Veronica A. Romero and transfers the administration of the agreement to the DOI/NBC Southwest Branch, Fort Huachuca, AZ.

6.    Recipient: ITMA

7. Cooperative Agreement Administrative Identification Number: For the purpose of identifying the Cooperative Agreement in the Federal Finance System (FFS) this action will be numbered as 5652400001. OHTA's Account for the payment of these funds in FFS is 1060 OTX 01 M6 but is converted to DOI/NBC, Fort Huachuca Accounting Classification of 2007 WH 6522 252ZWHOTH 400001 1A.

### STATEMENT OF WORK AND SUPPORTING DOCUMENTATION

C.    AUTHORITY, PURPOSE, AND SCOPE

There is no change from the original Cooperative Agreement or previously approved modifications.

D.    OBJECTIVES AND TASKS

There is no change from the original Cooperative Agreement or previously approved modifications.

E.    OTHER PROVISIONS

There is no change from the original Cooperative Agreement or previously approved modifications.

F.    TECHNICAL QUALIFICATIONS REQUIREMENTS

There is no change from the original Cooperative Agreement or previously approved modifications.

G.    PROGRESS REPORT DELIVERABLES

There is no change from the original Cooperative Agreement or previously approved modifications.

H.    PERIOD OF PERFORMANCE/TERMS OF COOPERATIVE AGREEMENT

The period of performance is unchanged for the period as agreed to by all parties in Modification #004.

I.    FUNDING COOPERATIVE AGREEMENT

This amendment is to make available additional funds in the amount of forty-four thousand dollars ($44,000.00) to ITMA's Cooperative Agreement #5652400001. The purpose of the funding is for travel, lodging, and administrative costs associated with the May 31, 2007 Tribal Trust Funds Settlements meeting. OHTA's Account for the payment of these funds in FFS is 1060 OTX 01 M6 but is converted to DOI/NBC, Fort Huachuca Accounting Classification of 2007 WH 6522 252ZWHOTH 400001 1A.

J.    PRE-AWARD COSTS

There is no change from the original Cooperative Agreement or previously approved modifications.

K.    DISPUTES

The Agreements Officer is the final decision maker on any administrative dispute between ITMA and DOI/OHTA under this Cooperative Agreement. However, the parties expressly acknowledge that this Cooperative Agreement contemplates a complex dispute mechanism process involving Tribal Trust Fund accounts and that the Agreements Officer has no dispute resolution control over any dispute or disagreement regarding the substance of that process (i.e. resolution of trust fund accounting and privilege issues by the oversight panel contemplated in Paragraph II.B.1.i) of the original Cooperative

Agreement. The parties intend to use every reasonable means available, including the use of a neutral mediator if necessary, to try to avoid terminating this agreement.

L.    ATTACHMENTS/APPENDICES

There is no change from the original Cooperative Agreement or previously approved modifications.

M.    MONITORING PLAN

There is no change from the original Cooperative Agreement or previously approved modifications.

N.    INDIRECT RATES

There is no change from the original Cooperative Agreement or previously approved modifications.

O.    NOTICE

Any notice under this agreement shall be in writing and delivered in person or by public or private courier service (including the U.S. Postal Service Express Mail) or Certified Mail with return receipt requested or by facsimile.  All notices shall be addressed to the parties at the following addresses or at such other addresses as the parties may from time to time direct in writing:

For ITMA  Name:    Mary Zuni, Executive Director
          Address: 2800 San Mateo Blvd., Suite 105
                   Albuquerque, NM 87110
          Phone:   505-247-1447
          Fax:     505-247-1449
          E-mail:  mary@itmatrustfunds.org

For OHTA  Name:    John H. McClanahan
                   Tribal Trust Accounting Program Manager
                   Office of Historical Trust Accounting
                   U.S. Department of the Interior
          Address: 1801 Pennsylvania Ave., NW, Suite 500
                   Washington, D.C. 20006
          Phone:   202-327-5300
          Fax:     202-327-5375
          E-mail:  John_McClanahan@ios.doi.gov

For NBC   Name:    Veronica A. Romero
                   Agreements Officer

|           | National Business Center |
|-----------|--------------------------|
|           | U.S. Department of the Interior |
| Address:  | PO Box 12924 |
|           | Fort Huachuca, AZ 85670-2924 |
| Phone:    | 520-533-8944 |
| Fax:      | 520-538-3761 |
| E-mail:   | Veronica_Romero@NBC.GOV |

Any notice delivery shall be deemed to have been given on the earlier of (a) actual refusal to accept delivery, (b) the date of mailing by certified mail, or (c) facsimile delivery is verified.

**P.    OTHER PROVISIONS**

Veronica A. Romero gave verbal authorization to proceed in an amount not to exceed $44,000.00 on 5/29/07. These funds are for allowable costs associated with the ITMA session on Tribal Trust Funds Settlements-31 May 2007, including travel, lodging and administrative costs.

**ACCEPTANCE**

The foregoing Cooperative Agreement Modification #005 between the Intertribal Monitoring Association on Indian Trust Funds and the U.S. Department of the Interior/Office of Historical Trust Accounting through the National Business Center is accepted as evidenced by the signatures below.

**ITMA:**    **INTERTRIBAL MONITORING ASSOCIATION ON INDIAN TRUST FUNDS**

Executive Director                                          Date    6/18/07

**OHTA:**    **OFFICE OF HISTORICAL TRUST ACCOUNTING**

Executive Director                                          Date    6/19/07

**DOI/NBC:**    **DEPARTMENT OF THE INTERIOR/NATIONAL BUSINESS CENTER**

Agreements Officer                                          Date    6/21/07